**UNITED STATES of America, Plaintiff–Appellee,**

v.

**David Post ANDERTON, Defendant–Appellant.**

No. 79–5615.

United States Court of Appeals, Fifth Circuit.

Nov. 3, 1980.

John A. Brady, Forth Worth, Tex., for defendant–appellant.

Jimmy L. Tallant, Asst. U.S. Atty., Fort Worth, Tex., for plaintiff–appellee.

Before BROWN, HENDERSON and SAM D. JOHNSON, Circuit Judges.

HENDERSON, Circuit Judge:

The appellant, David Anderton, appeals his conviction of conspiring to bribe a public official and eleven substantive counts of bribery in violation of 18 U.S.C.A. §§ 201(b)(3) and 371. Because the trial court failed to clearly instruct the jury on his entrapment defense, we reverse.

The government's chief witness, Charles Lebredo, a special agent with the Criminal Investigation Division of the Internal Revenue Service, testified that on several occasions (corresponding to the substantive counts) Anderton gave him money with the understanding that he would be warned of pending arrests and protected from investigation. The government played tape recordings of some conversations between the two. According to Lebredo, Robert Pittman arranged his initial meeting with Anderton.

Earlier in 1978 Lebredo had been investigating violations of the federal gambling laws. Don Evans, and investigator with the district attorney's office of Tarrant County (Texas), assisted him. After Lebredo caused Pittman to be prosecuted for failure to pay the federal tax on gambling receipts, Pittman went to Evans for help. Evans, pretending to be a corrupt law enforcement officer, suggested that Pittman bribe Lebredo. Pittman subsequently met Lebredo and paid him $1000.00 to use his influence to dismiss the charges. After the charges were dropped, Pittman began to pay Lebredo regularly for protection of his bookmaking operation. Needless to say, Pittman did not know Lebredo was an honest officer who was recording all their conversations.

Pittman, a witness for Anderton, testified that after he began paying Lebredo and Evans, they asked if he knew Anderton. He replied that he knew Anderton, but had not seen him for several years. The agents then told him to try to bring Anderton into their "program." Pittman stated that he tried to avoid doing so, but because of continued pressure, he finally sought out Anderton.[1]

When Pittman approached Anderton with the proposition, Anderton expressed surprise that Evans wanted him to set up a bookmaking operation and pay for protection. Pittman suggested that, in view of their ability to make things hard for all concerned, Anderton would be doing them both a favor if he talked to Evans and Lebredo.

Anderton admitted he paid Lebredo $500.00 every other week, and passed on

---

1. Under cross-examination Lebredo admitted that he had brought up Anderton's name, but said he was not sure who suggested that a meeting be arranged.

$200.00 every other week for Charlie Norvell, a bookmaker, but testified that he did so only to protect his wife and children. Anderton had been arrested for gambling in 1966. After the case was dismissed the IRS secured a substantial lien for unpaid wagering taxes. Anderton claimed that because he was unable to pay the tax local police periodically jailed him, without cause, and allowed IRS agents to seize his personal property. Both Anderton and his mother testified that late one night a group of seven or eight armed men rushed into the house and ransacked the premises; destroying property and abusing the family. The invaders, who were led by Evans, were a group of local law enforcement officers known as the Metrosquad. By Anderton's account, these experiences caused him to be apprehensive of the IRS and law enforcement officers generally, and fear of injury to his family motivated him to enter "the program."

At the close of evidence, the appellant asked the court to instruct the jury on the meaning of "law enforcement officer" as that term is used in a standard entrapment instruction. The requested instruction pointed out that a law enforcement officer is not only one "actually in the employment of a federal or state governmental agency in the pursuit of such occupation, but may also include any person who acts solely for or in behalf of such actual law enforcement officer . . . ."

The trial judge did not give this instruction or its substantial equivalent. Instead, he charged the jury that

Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment, and the law as a matter of policy forbids his conviction in such a case.

. . . . Nor is it possible for a defendant to be entrapped by a private citizen who is neither a government officer nor an agent of a government officer; inducement to commit a crime from such a private citizen cannot be deemed sufficient to support a claim of entrapment.

.    .    .    .    .

. . . . [I]f the evidence in the case should leave you with a reasonable doubt whether the defendant had the previous intent or purpose to commit an offense of the character charged, apart from the inducement or persuasion of some officer or agent of the government, then it is your duty to find him not guilty.

During its deliberation the jury sent the judge a note asking: "Could Robert Pittman, who contacted Dave Anderton, have been considered acting as an agent of the government official?" He responded: "In answer to your question, you are advised that this is a factual issue to be decided by the jury under the facts heard in court and the Court's instructions as to the law." Appellant's counsel objected to this answer and again requested that the court tender the proposed instruction or one "equivalent or substantially similar." The jury subsequently returned its guilty verdicts.

■ One may not be convicted of a crime "when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense." *Sorrells v. United States*, 287 U.S. 435, 442, 53 S.Ct. 210, 212, 77 L.Ed. 413, 417 (1932); *see also Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). The problem here is that Pittman, the person who allegedly "implanted" the criminal design, did not intend to cause the appellant's arrest. This obviously bothered the jury, and appears to have confused the government in its argument of this appeal.

■ If the government plays no part in creating a crime there is no entrapment, regardless of the entreaties of persons not connected with the government: the defense is available only because "it is unthinkable that the government should pros-

ecute those whom it has urged to commit crime[s], [and therefore] our courts refuse to countenance prosecutions which rest on such an unsavory foundation." *United States v. Romano*, 278 F.2d 202, 204 (2nd Cir. 1960). *See also United States v. Garcia*, 546 F.2d 613 (5th Cir.), *cert. denied*, 430 U.S. 958, 97 S.Ct. 1608, 51 L.Ed.2d 810 (1977). To constitute entrapment, it must be shown that the government was involved, directly or indirectly, in the creation of the crime. *Garcia*, 546 F.2d at 615. "While . . . an entrapment defense [is available] even where the government has neither prior knowledge of nor direct involvement in the scheme to entrap, it still requires a showing that the government and the entrapper have an established relationship such that the government is estopped from denying responsibility." *United States v. Perl*, 584 F.2d 1316, 1322 n.5 (4th Cir. 1978), *cert. denied*, 439 U.S. 1130, 99 S.Ct. 1050, 59 L.Ed.2d 92 (1979).

The Supreme Court opinions in entrapment cases concentrate on the predisposition of the defendant to commit the crime, without any dispute of government inducement. However none of them, when discussing entrapment, speaks of government initiation in terms that would limit the defense to direct contacts between the government and the defendant. According to the plurality opinion in *Hampton*, the defense is available if "governmental activity" implants criminal disposition, 425 U.S. at 490, 96 S.Ct. at 1650, 48 L.Ed.2d at 119; a concurrence speaks of "[o]fficial involvement," 425 U.S. at 493 n.3, 96 S.Ct. at 1651

n.3, 48 L.Ed.2d at 120 n.3. In *Russell* the Court said: "It is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." 411 U.S. at 436, 93 S.Ct. at 1645, 36 L.Ed.2d at 376. *Sherman* quoted *Sorrells*, stating the key was "creative activity" of the officials, and directing fact—finders to determine where the "criminal design originates." 356 U.S. at 371, 78 S.Ct. at 820, 2 L.Ed.2d at 851.

The evidence in this case would sustain the conclusion that government employees first mentioned Anderton and repeatedly pressured Pittman to contact him. All the testimony supports the belief that if the law enforcement officers had not prodded Pittman, Anderton would never have come into contact with Lebredo. Entrapment does not turn on the government's control of every detail of the discussions between Pittman, and the appellant; once the government takes advantage of someone like Pittman, it is fairly charged with responsibility for his actions.[2] "The Government cannot make such use of an informer and then claim disassociation through ignorance." *Sherman*, 356 U.S. at 375, 78 S.Ct. at 822, 2 L.Ed.2d at 852.

Having satisfied ourselves that there is entrapment even though the person implanting the illegal purpose is an ignorant pawn of the government, we must now determine whether the court's instructions adequately stated the parameters of this defense.[3] Viewing the instructions in total-

**2.** Anderton also urges that the court erred when it refused to give his proposed instruction number two. The instruction, which was submitted as an alternative to the court's entrapment charge, would have compelled acquittal if the jury found that law enforcement officers, acting under color of law but beyond their authority, induced Anderton to commit the crimes of which he was accused. This instruction would have shifted the focus of the defense from the defendant's predisposition to the government's misconduct. If a governmental misconduct defense survives *Hampton* at all, it is a question of law, not for submission to the jury, *United States v. Graves*, 556 F.2d 1319 (5th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978), so the court

was correct in refusing to give the requested charge. We are satisfied that the conduct of the government employees in this case was not such that we should exercise our supervisory power to bar prosecution. *See id.*, 556 F.2d at 1325–26.

**3.** There is no entrapment if the unwitting agent merely introduces the defendant to the official, *Romano*; he must induce the crime. *Cf. Masciale v. United States*, 356 U.S. 386, 387, 78 S.Ct. 827, 828, 2 L.Ed.2d 859, 861 ("It is noteworthy that nowhere in his testimony did [the defendant] state that during the conversation either [agent] tried to persuade him to enter the narcotics traffic."). Although both Anderton and Pittman, who were the only witnesses to their

ity, we conclude they did not, but rather misled the jury. *See generally Bollenbach v. United States*, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946).

There is no subtly shadowed agency question in this case. If the jury found that Pittman was acting on his own when he contacted Anderton then it did not need to consider entrapment further. On the other hand if it found that Lebredo used Pittman to procure the commission of the crime, the jury had to proceed to the question of Anderton's disposition toward bribery. When the court told the jury that the acts of a private citizen who is not the agent of the government cannot support a claim of entrapment, without clarifying the meaning of the word "agent," it failed in its duty to guide the jury.

> The primary purpose of jury instructions is to define with substantial particularity the factual issues, and clearly to instruct the jurors as to the principles of law which they are to apply in deciding the factual issues involved in the case before them. Accordingly, a defendant is entitled to a charge which precisely and specifically, rather than merely generally or abstractly, points to the theory of his defense.

*United States v. Gilbreath*, 452 F.2d 992, 994 (5th Cir. 1971) (citations omitted); *accord, United States v. Wolffs*, 594 F.2d 77 (5th Cir. 1979); *United States v. Wolfson*, 573 F.2d 216 (5th Cir. 1978). That it would have been difficult to properly explain the various roles a "private citizen" might play only suggests this term might have been avoided.

We reject government's contention that the court clearly stated the standard for answering the initial question of government involvement. As noted earlier, the court instructed the jury that "inducement to commit a crime from . . . a private citizen cannot be deemed sufficient to support a claim of entrapment," unless that private citizen was an "agent" of a government officer. In support of its argument the government insists that the principles of agency could be shown to govern this case, and implicitly suggests that a careful lawyer would be able to figure out the answer. We have no quarrel with this argument, as far as it goes, although it might not be the simplest way to reach the proper result. The difficulty is that the court never explained the appropriate rules of agency, whatever they are. As Justice Frankfurter wrote in *Bollenbach v. United States*, 326 U.S. 607, 613, 66 S.Ct. 402, 405, 90 L.Ed. 350, 355 (1946): "What reason is there for assuming that the jury did not also fail to appreciate these factors which the government, in an elaborate argument, explains as requisite for a proper understanding of that which at best was dubiously expressed?" In a trial in which the government's key witness was a "Special Agent," it was just too much to expect an unguided lay jury to define the word without assistance from the court.[4] This problem was compounded by saying that inducement from a private citizen was not enough. While perhaps true to a certain extent, this portion of the instruction apparently confused the jury during their deliberations, as suggested by their question to the judge.

The government is correct, of course, when it says that "[t]erms which are reasonably within the common understanding of juries, and which are not technical or ambiguous, need not be defined in

---

conversations, testified that Pittman pressured Anderton, the jury could have rejected their testimony. *Masciale*, 356 U.S. at 388, 78 S.Ct. at 828, 2 L.Ed.2d at 861. Neither party suggest that the court (as opposed to the jury) should have decided this issue. *Perl, Garcia* and *Romano* all assume that the extent of government involvement is a question for the jury where, as here, there is some evidence of government participation. *But cf. Masciale*, 356 U.S. at

388, 78 S.Ct. at 828, 2 L.Ed. at 861 n.5 (declining to consider a similar question), and the dissent of Justice Frankfurter therein.

4. We note that several opinions in entrapment cases have used the term "agent" in the context of a government employee. *Sorrells*, 287 U.S. at 440, 53 S.Ct. at 212, 77 L.Ed. at 416; *Graves*, 556 F.2d at 1323.

the trial court's charge."[5]  However, the word "agent" is not self–defining.  The point the government seems to miss is that the term, if proper at all, was meant to carry a rather esoteric meaning.  This was not the situation in any of the cases cited to us.  *See United States v. Johnson*, 575 F.2d 1347, 1357–58 (5th Cir. 1978), *cert. denied*, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979) ("organizer, supervisor, or other position of management" and "substantial income");  *United States v. Crockett*, 506 F.2d 759, 762 (5th Cir.), *cert. denied*, 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975) ("gambling");  *Evans v. United States*, 349 F.2d 653, 658–59 (5th Cir. 1965) ("proprietary interest").  When the instruction uses a term of legal significance, its meaning must be explained, especially when there is a request for clarifying instructions.

■  The jury's inquiry to the judge was a clear indication of its confusion.  "When a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy."  *Bollenbach*, 326 U.S. at 612–13, 66 S.Ct. at 405, 90 L.Ed. at 354.  Yet the jury's question was dealt with in a cursory manner, skirted by a reply that "agency" was a question for the jury to decide according to the instructions.  Indeed, when it submitted the matter to the jury, the court apparently recognized agency was a question for their decision.  The error, to quote again from *Gilbreath*, was the failure "to instruct the jurors as to the principles of law which they are to apply in deciding the factual issues."

The judgment of conviction is REVERSED and the case is REMANDED to the district court for a new trial.

lance.  *Evans v. United States*, 349 F.2d 653 (5th Cir. 1965).