UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas M. ATTELL,
Defendant-Appellant.

No. 80–1897.

United States Court of Appeals,
Fifth Circuit.
Unit A

Sept. 11, 1981.

Charles Louis Roberts, El Paso, Tex., for defendant-appellant.

LeRoy M. Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

---

Before RUBIN, RANDALL and TATE, Circuit Judges.

RANDALL, Circuit Judge:

On March 30, 1979, Defendant-Appellant Thomas M. Attell was indicted for conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. § 846, and for possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Following a jury trial in June 1979, Attell was convicted of possession of cocaine with intent to distribute and of conspiracy to possess cocaine, a lesser included offense of the original charge of conspiracy to possess with intent to distribute. This conviction was reversed on appeal.[1] Attell's second trial occurred in July, 1980; he was again convicted of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and was sentenced to two years imprisonment to be followed by a ten-year special parole term. On appeal from this second conviction, Attell argues that the trial court erred in refusing to give certain instructions dealing with the defense of entrapment which were requested by Attell's counsel and in refusing to poll the jury regarding the possible prejudicial effect of certain newspaper and television news reports concerning Attell's previous trial which were broadcast and published during Attell's second trial. Finding that the trial court here failed to follow the teachings of *United States v. Williams*, 568 F.2d 464 (5th Cir. 1978), and *United States v. Herring*, 568 F.2d 1099 (5th Cir. 1978), we again reverse Attell's conviction.

Attell's second trial began on July 22, 1980; on the morning of July 23, before the jury returned to the jury box and testimony resumed, Attell's counsel informed the court that there was an article in the morning newspaper concerning the trial and that a television news story, broadcast the previ-

---

1. Attell's conviction was reversed and remanded in an unpublished opinion of this court. 617 F.2d 294 (5th Cir. 1980).

ous evening, had referred to Attell's previous trial and conviction on the same charges.[2] A tape of the television news broadcast was included in the record; in relevant part, the story reported that:

Tom Attel [sic] of El Paso's Attel Produce company is getting his second day in Court for a cocaine conspiracy charge. Attel was convicted a year ago for possession and intent to distribute the drug. The Court of Criminal Appeals granted him a new trial because of the admission of some hearsay evidence of a Government witness. Testimony in this trial will be basically the same except that Attel has traded in Attorney Blu Sanders for Jack Luscombe and Wayne Windle. The Government's side is supported by the testimony of a Drug Enforcement Agent who met with Attel as an undercover dealer in August of 1978.

■ In *United States v. Herring, supra,* we set forth a sequential inquiry for the trial judge to employ when publicity relating in some way to the proceedings is disseminated during trial and brought to the court's attention. In a criminal proceeding, the first step is for the trial court to examine the material and inquire whether it creates a significant risk of possible prejudice to the defendant. Although, as we emphasized in *Herring,* this inquiry is often a complex one, requiring the trial court to weigh factors such as the nature of the defenses asserted, the possible effect of the publicity on any of these defenses and the timing of the publicity, *United States v.*

*Williams, supra,* teaches that publicity which includes information that the defendant was convicted of the same charge at an earlier trial is a type of publicity which inherently poses a substantial risk of prejudice to a defendant if members of the jury are exposed to it. "Indeed, we are hard pressed to think of anything more damning to an accused than information that a jury had previously convicted him for the crime charged." *Williams* at 471.

The publicity involved here is strikingly similar to that in *Williams.* The television news story involved here reported that the defendant had previously been convicted of the offenses charged but that a new trial had been ordered because of the erroneous admission of hearsay at the first trial. As we noted in *Williams,* where a news report had stated that a new trial had been ordered because of "erroneous testimony," *Williams* at 470, this type of statement could easily suggest to a layman that the defendant had "got off on a technicality." *Id.*

The only difference between *Williams* and this case is that in *Williams* the trial court polled the jury and it was established that several jurors had in fact seen the news reports and learned of the defendant's prior conviction. Despite the highly prejudicial nature of the publicity involved, the trial judge in this case denied defense counsel's request for a poll which would have revealed whether any of the jurors had heard or read the news reports. In this

---

2. The record reveals the following exchange between Attell's counsel and the trial judge:

MR. WINDLE: We would ask the Court to poll the jury on whether or not any of the jurors read a news article or saw a news spot on TV or heard a news spot on the radio. We don't know about radio, but we know that since yesterday, there was a newspaper article in The Herald-Post and at least a news spot on Channel 9.

And it is our request that the Court poll the jury to determine which ones, if any, saw the news or read it or heard it, and then ask them if that would make any difference.

THE COURT: I will turn you down on that. I am not going to start polling the juries every day to see if they heard any news story.

MR. LUSCOMBE: Not necessarily poll the jury, but just ask them if they inadvertently watched anything—I believe on Channel 9, the story on Channel 9 was to the effect that Mr. Attel had been previously convicted and the only reason that the case was back was because some hearsay testimony was admitted.

THE COURT: It was excluded.

MR. WINDLE: Well, that's not the only way the TV reported it, however.

THE COURT: You mean they were wrong about something?

MR. LUSCOMBE: And really, the only difference in the trial was the different attorney.

THE COURT: That's a big difference. Let the record show that you have made that as a formal motion, but I will overrule it.

respect, the case is similar to *Herring, supra*, where the trial court declined to poll the jury concerning their exposure to news reports of threats against a prosecution witness. Although in the absence of a poll, it is impossible to determine whether the jurors were actually exposed to news reports containing references to Attell's first trial, here, as in *Herring, supra*, we would have to speculate to conclude that no juror had seen or heard these accounts and therefore that Attell had not been prejudiced. *Herring* cautions against indulging in any such speculation. "In the interests of justice, we must give the defendant the benefit of the doubt in this connection." *Herring*, at 1106. Therefore, the proper exercise of our supervisory powers requires that the conviction be reversed.[3]

■ On appeal, Attell also challenges the propriety of the trial court's refusal to give the jury instructions defining the term "agent" in connection with Attell's entrapment defense. Apparently, the trial court gave similar instructions to the jury at Attell's first and second trials. Attell raised this argument on his first appeal; however, we declined to consider it then because it was not necessary to our decision. Although our disposition of this second appeal also makes it unnecessary for us to determine whether the court's refusal to give this instruction was reversible error, never-

theless, in the interest of expediting the conclusion of this already protracted prosecution, we shall address the propriety of the requested instruction here.

Attell's entrapment defense hinged on the activities of George Smith. Attell testified that Smith had harassed him for a period of several months in an attempt to force Attell to furnish Smith with drugs and to sell drugs to some "big guys" who wanted to purchase a large quantity of cocaine. Attell stated that Smith's harassment made him fear for the safety of his family and intimidated him into doing an act he would not otherwise have done. Attell testified that it was Smith who scheduled and arranged the meetings between Attell and an undercover DEA agent and that Attell went to these appointments because he was "afraid not to go." It is undisputed that Smith worked as a paid informant for the government. At trial Smith did not testify; the government made out its case primarily through testimony of the undercover DEA agent.

Attell argues that since his entrapment defense rested primarily on the actions of Smith, who was not a regular law enforcement officer or agent, and the entrapment instruction could be understood to refer only to such regular law enforcement officers or agents, the charge effectively failed to present his entrapment defense.[4] Specif-

---

3. Because this case, like *Williams* and *Herring* comes to us on direct appeal of a federal criminal conviction, our reversal here, as in those cases, may be predicated upon our supervisory power over the district courts. *See, e. g., Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959). We express no opinion on any constitutional questions posed by the trial court's action.

4. The jury was given the following instruction with regard to entrapment:

Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment, and the law, as a matter of policy, forbids his conviction in such a case. On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that Goverment [sic] agents provide what appears to be a favorable opportunity, is not entrapment. For ex-

ample, it is not entrapment for a Government agent to pretend to be someone else and to offer, either directly or through an informer or other decoy, to engage in an unlawful transaction.

If then the jury should find beyond a reasonable doubt from the evidence in the case that before anything at all occurred respecting the alleged offense involved in this case, the defendant was ready and willing to commit a crime, such as charged in the indictment, whenever opportunity was afforded, and that Government officers or their agents did no more than offer the opportunity, then the jury should find that the defendant is not a victim of entrapment.

On the other hand, if the evidence in the case should leave you with a reasonable doubt whether the defendant had the previous intent or purpose to commit an offense of the character charged, apart from the induce-

ically, Attell urges that the jury should have been explicitly instructed that an individual may be entrapped by a "lay" informant employed by the government as well as by regular law enforcement personnel. Attell argues on appeal that in the absence of such an instruction, the jury may have improperly assumed that Attell would have a defense of entrapment only if he established that it was a regular law enforcement agent, rather than a paid informant acting as an "agent" of the government in the broader sense of the term, who entrapped him.

Following oral argument in this case, counsel for Attell called our attention to *United States v. Anderton*, 629 F.2d 1044 (5th Cir. 1980), in support of this argument. *Anderton* is, in several respects, factually distinguishable from this case. Nevertheless, the *Anderton* court's conclusions that "the word 'agent' is not self-defining," *id.* at 1049, and that in a case in which the defendant asserts an entrapment defense and in which both a government agent formally denominated as such (*e. g.*, an FBI agent or a DEA agent) and a person acting as an agent for the government within the legal definition of the term "agent" (*e. g.*, a paid informer) are involved, the court should give an instruction properly defining the term "agent" are instructive here. Thus, we suggest that if an entrapment instruction is given at Attell's third trial, the term "agent" should be given an appropriate definition in the charge.

 Attell also contends that the government failed to adduce sufficient evidence to rebut his proof of entrapment and thus, that his retrial is barred. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *United States v. Till*, 609 F.2d 228 (5th Cir. 1980). We find this argument unpersuasive. The record reflects that Attell, in discussions with DEA agents, exhibited familiarity with the details of drug smuggling organizations and operations, the standard weights and measures employed in drug trafficking and the routes used to smuggle drugs from South America into the United States. There was, therefore, ample evidence from which the jury could infer that Attell was not an unwary law abiding citizen entrapped by government agents.

For the foregoing reasons, the judgment of conviction is reversed.

REVERSED.

---

ment or persuasion of some officer or agent of the Government, then it is your duty to find him not guilty.

The burden is on the Government to prove beyond a reasonable doubt that the defendant was not entrapped [R. Vol. VI, 401–402].