**UNITED STATES of America, Plaintiff,**

v.

**Daniel DAVILA, Defendant.**

No. 87–758–Cr.

United States District Court,
S.D. Florida.

May 27, 1988.

Frank Tamen, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Jerrell A. Breslin, Coconut Grove, Fla., for defendant.

## MEMORANDUM OPINION

SCOTT, District Judge.

Daniel Davila is charged in a two-count indictment with possession and transportation of a firearm by a convicted felon in violation of 18 U.S.C.App. § 1202(a)(1). This case was tried to the bench on March 14, 1988. The Government's case was offered through the testimony of one witness, A.T.F.[1] Agent Joe Benitez. Similarly, the Defendant's case was presented through one witness, Defendant Daniel Davila. The evidence takes us into what can only be described as the Miami Beach subterranean culture of cocaine and guns.

### I. BACKGROUND

Daniel Davila was convicted in 1985 in Florida state court for carrying a concealed firearm. After his discharge from state custody, Davila became heavily involved in the use of crack cocaine. In October, 1985, Davila met Henry, who also was a crack cocaine user. They developed an auspicious and natural relationship in which their principal pursuit was crack cocaine. Henry told Davila that his cousin needed a machine gun to defend himself from a threat (impliedly, the threat was a drug rip-off). Henry stressed the urgency of the need for the machine gun. In reality, Henry was a confidential informant for A.T.F. Agent Joe Benitez, who had instructed Henry to set up a contact between A.T.F. and Davila in order to consummate the purchase of automatic weapons.

The subsequent events were recorded through a series of tape-recorded conversations between A.T.F. and Davila. The Court has carefully reviewed each of these tapes, in light of the testimony of Agent Benitez and Defendant Davila.

At trial, Davila testified that to help Henry—and only for that purpose—he pursued the Miami Beach subculture in an effort to locate a machine gun. Through a friend, Miguelito, Davila was able to obtain a 9MM

Browning. Davila, however, never obtained the machine gun requested by Henry. In the meantime, Agent Jorge Calderon had been introduced to Davila as Henry's cousin. Following several phone conversations (which are Government Exhibits 1, 2 and 3) a meeting was finally set up between A.T.F. agents and Davila. On October 16, 1985, Agents Benitez and Carlos Montavelo met with Defendant Davila in order to purchase the machine gun on Washington Avenue, Miami Beach, Florida. This meeting took place in the automobile of the A.T.F. agents. It was recorded and introduced into evidence as Government Exhibit 5.

### II. CONTENTIONS

As one might anticipate at this juncture, the defense in this case is entrapment. In order to support his defense of entrapment, Davila points to several pieces of evidence: Defendant argues that (a) he had no knowledge or background of weapons; (b) he attempted to obtain a machine gun only in order to accommodate a friend; (c) he was a cocaine addict during this period which mitigated against his predisposition to commit this crime; (d) he never produced the machine gun promised; and (e) subsequently he refused to participate in further dealings involving guns. In short, Davila contends that this was a one-time deal in which he provided the gun only for the purpose of protecting his friend's family.

The Government response is rather simple: regardless of Defendant's motivation, Davila agreed to provide a drug dealer with a machine gun; made various attempts through Miguelito to locate one; and while admittedly he never located an automatic weapon, he did provide a 9MM Browning to A.T.F. Agents for $150.00, having been previously convicted of a felony.

### III. LEGAL DISCUSSION

■ Entrapment is an affirmative defense of limited application. *Mathews v. United States,* —— U.S. ——, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *United States v.*

---

1. Bureau of Alcohol, Tobacco and Firearms.

*Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). In order to raise the defense of entrapment, the defendant has the initial burden of coming forward with evidence of governmental involvement and inducement. *United States v. Buckley,* 586 F.2d 498 (5th Cir.1978); *United States v. Groessel,* 440 F.2d 602 (5th Cir.1971), *cert. denied,* 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971). To satisfy the burden the defendant must adduce some evidence which tends to show a lack of predisposition to commit the offenses charged.[2] Moreover, in determining whether the burden has been satisfied, the evidence must be viewed in a light most favorable to the defendant. If the defendant satisfies the burden, the government must then prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. *United States v. Alvarez,* 755 F.2d 830 (11th Cir.1985).

There are currently two approaches to the defense of entrapment. Each involves a distinct test.[3] The majority view is referred to as the "subjective test"; this rule was approved by a majority of the Supreme Court in *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). This subjective approach has been consistently reaffirmed by the Supreme Court, and is thus the controlling law in this instance.

■ Following Supreme Court precedent, the Eleventh Circuit has adopted the subjective test by stating, "when entrapment is at issue, the focal point of the inquiry is on the predisposition of the defendant." *Alvarez,* 755 F.2d at 856; *United States v. Dean,* 666 F.2d 174, 180 (5th Cir. Unit B 1982) (quoting *United States v. Webster,* 649 F.2d 346, 348 (5th Cir.1981)

(*en banc* )), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1983). Simply put, where a defendant is predisposed to commit a crime, he cannot be entrapped, regardless of how outrageous or overreaching the Government's conduct may be. *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *Russell,* 411 U.S. at 429, 93 S.Ct. at 1641; *United States v. Rey,* 811 F.2d 1453 (11th Cir.1987). If the defendant is ready and willing to commit crimes, such as are charged in the indictment, whenever the opportunity affords itself, the requisite predisposition is established. *See, United States v. Alvarez,* 755 F.2d at 856.

On the other hand, "when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the offense" the defense of entrapment will prevail. *Sorrells,* 287 U.S. at 442, 53 S.Ct. at 212–13; *see also, Sherman,* 356 U.S. at 372, 78 S.Ct. at 821; *Hampton,* 425 U.S. at 489, 96 S.Ct. at 1649–50; *United States v. Anderton,* 629 F.2d 1044, 1046 (5th Cir.1980). In such circumstances, "the defense is available only because it is unthinkable that the government should prosecute those whom it has urged to commit crime[s], [and therefore] our courts refuse to countenance prosecutions which rest on such an unsavory foundation." *United States v. Anderton,* 629 F.2d 1046–47; (quoting, *United States v. Romano,* 278 F.2d 202, 204 (2nd Cir.1960)).

■ Where the defense of entrapment is at issue, the court's analysis is bifurcated, dealing with two factual questions:

[I]n such cases two questions of fact arise: (1) did the agent induce the accused to commit the offense charged in the indictment; (2) if so, was the accused

---

2. It has been held that the required showing by the defendant must consist of something more than a mere scintilla of evidence. *United States v. Buckley,* 586 F.2d 498, 501 (5th Cir.1978); *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973).

3. These two approaches are known as the *subjective* and *objective test* to entrapment. The emphasis under the subjective test is upon the defendant's propensity to commit the offense

rather than on the officer's misconduct. Whereas, the objective test focuses upon the inducements used by the government agent(s). Under the objective test, entrapment has been established if the offense was induced or encouraged by "employing methods of persuasion which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it." ALI Model Penal Code § 2.13 (1962).

ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offense.

*United States v. Benavidez,* 558 F.2d 308, 310 (5th Cir.1977) (quoting *United States v. Sherman,* 200 F.2d 880, 882–83 (2nd Cir.1952)). With this background, we next turn to the present case.

## IV. THE PRESENT CASE

■ Daniel Davila is charged in a two-count indictment for possession and transportation of a firearm by a convicted felon as noted above. Davila relies upon the defense of entrapment. We reject that defense. We find that Davila had a predisposition to commit the crime; and, therefore, entrapment has not be established. *See, United States v. Dickens,* 524 F.2d 441 (5th Cir.1975), *cert. denied,* 425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976). Here, Davila's conduct—both preceding and at the time of this crime—firmly establishes his predisposition to commit the crimes named in the indictment beyond a reasonable doubt.

When considering whether one has been entrapped, evidence of other crimes is also admissible where relevant to other issues in the case. *United States v. Russell,* 411 U.S. 423, 429, 93 S.Ct. 1637, 1641, 36 L.Ed. 2d 366 (1973); *Sorrells v. United States,* 287 U.S. 435, 451, 53 S.Ct. 210, 216, 77 L.Ed. 413 (1932) ("By raising the defense of entrapment, the defendant opens himself up to searching inquiry into his own conduct and predisposition ..."). Davila's prior conviction for carrying a concealed firearm is evidence of his current propensity to commit the offenses at issue.

Davila asserts that he had no knowledge or background in firearms. This contention is simply belied by the evidence. Davila's prior experience with firearms is aptly illustrated by his previous weapons conviction. Furthermore, during a conversation with A.T.F. Agent Jorge Calderon, Davila spoke of past weapon transactions which he conducted and the prices he demanded. (Government exhibit 3, p. 8). At one point, when asked by Agent Benitez if he had access to a sawed-off shotgun, Davila responded in the affirmative saying "Yes, weapons I always have...." (Government exhibit 5, p. 6). Similarly, throughout the recorded phone conversations with the A.T. F. agents, Davila appeared quite knowledgeable of firearms. This was evidenced by Davila's explanation to Agent Calderon regarding the operation of an automatic weapon. (Government exhibit 3, p. 8).

■ Davila further contends that he was a cocaine addict during this period, thereby mitigating against his predisposition to commit this crime. However, after carefully considering the contentions, we are unwilling to accept his addiction as a mitigating factor. To view this contention otherwise would result in an impermissible "windfall" to Davila by virtue of his own criminal conduct. We are not prepared to place a judicial stamp of approval on the use of crack cocaine by permitting it to act as a defense to criminal conduct.

Finally, although Davila did not produce the automatic weapon promised, he did in fact provide government agents with a 9MM Browning. As a convicted felon, this action by Davila placed him in direct violation of the law. *See,* 18 U.S.C.App. § 1202(a)(1). Accordingly, we find that the acquisition and subsequent sale of the firearm in question, together with Davila's past history, unequivocally indicates his predisposition to commit the crimes named in the indictment. We also view his acceptance of the $150.00 as compensation for his criminal conduct as a final coup de gráce to the entrapment defense.

## V. CONCLUSION

Having thoroughly considered the tape-recorded conversations in light of the testimony given at trial, the Court finds the Defendant Daniel Davila guilty beyond a reasonable doubt of the crimes charged in the indictment. We also find that Davila was predisposed to commit the crimes in question and reject the defense of entrapment.

Sentencing of Davila will be set by accompanying Order of the Court. Davila shall report to the U.S. Probation Office to

commence the pre-sentence investigation process. Davila may remain released pending sentencing, subject to the pretrial conditions of release.