891 So.2d 280 (2003)
Norman PETTIBONE
v.
STATE of Alabama.
CR-01-0159.
Court of Criminal Appeals of Alabama.
October 31, 2003.
Rehearing Denied December 12, 2003.
Certiorari Quashed May 14, 2004.
*281 James Russell Pigott, Foley, for appellant.
Norman Pettibone, pro se.
William H. Pryor, Jr., atty. gen., and Robin Blevins Scales, asst. atty. gen., for appellee.
Alabama Supreme Court 1030500.

On Resubmission After Remand From the Alabama Supreme Court
WISE, Judge.
The appellant, Norman Pettibone, was convicted of one count of third-degree robbery, a violation of § 13A-8-43, Ala.Code 1975. On October 12, 2001, the circuit court sentenced Pettibone, a habitual offender with three prior felony convictions, to 99 years' imprisonment, imposed a $1,000 fine, and ordered Pettibone to pay $50 to the crime victims compensation fund. Following sentencing, Pettibone gave oral notice of appeal.
Pettibone's court-appointed appellate counsel filed a brief in substantial compliance with Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Counsel stated that his review of the record revealed no meritorious issues for this Court to review. This Court issued an order on January 11, 2002, informing Pettibone that his counsel had filed an Anders brief and ordering him to file with the Court a statement of any issues he believed to be worthy of review. Thereafter, Pettibone filed a pro se brief raising seven issues for this Court to consider on appeal. On May 24, 2002, we affirmed Pettibone's conviction, by unpublished memorandum. Pettibone v. State (No. CR-01-0159), 860 So.2d 914 (Ala.Crim.App.2002) (table). *282 Pettibone petitioned the Alabama Supreme Court for certiorari review. The Supreme Court granted Pettibone's petition, and on January 10, 2003, reversed this Court's judgment and remanded his case. Ex parte Pettibone, 891 So.2d 278 (Ala.2003). The Supreme Court held that because at least one of Pettibone's pro se issues was arguable on its merits and warranted further briefing, this Court should have remanded Pettibone's case to the circuit court to appoint new appellate counsel to represent Pettibone on appeal, rather than affirming his conviction. 891 So.2d at 280.
On May 6, 2003, on remand from the Alabama Supreme Court this Court set aside Pettibone's earlier submission in his appeal and instructed the circuit court to appoint new appellate counsel to represent Pettibone on appeal. On June 3, 2003, Pettibone's newly appointed appellate counsel filed a brief on Pettibone's behalf. Following the State's response to Pettibone's brief, Pettibone's case was resubmitted for appellate review on July 2, 2003.
On appeal, Pettibone raises the following issues: (1) whether the circuit court erred in denying his request for a mistrial based upon the prosecutor's references to his prior conviction for the same offense; (2) whether the circuit court's curative instructions were sufficient to eradicate the impression caused by the improper statements; and (3) whether under the doctrine of the law of the case the findings of the Alabama Supreme Court in this case mandate reversal.
The comments at issue occurred during the prosecutor's cross-examination of a defense witness. Defense counsel had questioned the witness about a conversation she had had with the victim a few months earlier at "a hearing related to this case." The witness said that the victim had told her that when she had identified Pettibone in a photographic lineup, she "didn't exactly say it was him, she just said it kind of looked like him." The prosecutor then asked:
"Q. Well, if this was so important, why didn't you run and tell that lawyer if you were trying to help [Pettibone] overturn his conviction?
"MR. SCULLY [defense counsel]: Judge, she hasn't testified that she was trying to help [Pettibone] overturn 
"THE COURT: I sustain the objection.
"....
"THE COURT: Yeah. I sustained the objection. Ask another question.
"MS. BOSCH [prosecutor]: All right.
"Q. Wasn't [it] part of that hearing that you came to a few months back to overturn [Pettibone's] conviction 
"MR. SCULLY: And, Judge, may I 
"THE COURT: I sustain the objection.
"MR. SCULLY: May we approach?
"THE COURT: Y'all approach the bench.
"(Bench conference held as follows:)
"MS. BOSCH: Judge 
"THE COURT: I sustained the objection and I'm instructing you not to mention a previous conviction.
"MR. SCULLY: And I would move a mistrial at this point, Judge.
"THE COURT: I deny your motion for mistrial.
"(Bench conference ended.)
"THE COURT: Ladies and gentlemen of the jury, I instruct you to disregard the prosecutor's last two questions."
(R. 211-12.)
"`[A] mistrial is a drastic remedy, to be used only sparingly and only to prevent *283 manifest injustice.' Ex parte Thomas, 625 So.2d 1156, 1157 (Ala.1993). A mistrial is an extreme measure that should be taken only when the prejudice cannot be eradicated by instructions or other curative actions of the trial court. Nix v. State, 370 So.2d 1115, 1117 (Ala.Crim.App.), cert. denied, 370 So.2d 1119 (Ala.1979). If an error can be effectively cured by an instruction, a mistrial is too drastic a remedy and is properly denied. Thompson v. State, 503 So.2d 871, 877 (Ala.Crim.App.1986)."
Ex parte Lawrence, 776 So.2d 50, 55 (Ala.2000). A trial court's ruling on a motion for a mistrial will be reversed only upon "a clear showing of abuse of discretion." Ex parte Jefferson, 473 So.2d 1110, 1114 (Ala.1985), cert. denied, 479 U.S. 922, 107 S.Ct. 328, 93 L.Ed.2d 300 (1986).
This Court has previously noted that we would be "`hard pressed to think of anything more damning to an accused than information that a jury had previously convicted him for the crime charged,'" Frazier v. State, 632 So.2d 1002, 1007 (Ala.Crim.App.1993) (quoting United States v. Attell, 655 F.2d 703, 705 (5th Cir.1981)), an error of this type may, nevertheless, be cured. See, e.g., Ex parte Wilson, 571 So.2d 1251, 1265 (Ala.1990). This Court has recognized the holding in Ex parte Wilson in a number of cases, including Bailey v. State, 717 So.2d 3 (Ala.Crim.App.1997), in which we stated:
"A reversal may be prevented if the trial court sustains an objection to the improper remark and promptly and appropriately instructs the jury as to the impropriety of the remark. Ex parte Wilson, 571 So.2d [1251,] at 1265 [(Ala.1990)]. `In giving a curative instruction on the defendant's right not to testify, the trial judge should . . . explain thoroughly and immediately to the jury that the defendant's failure to testify in his own behalf shall not create any presumption against him.' Wilson, 571 So.2d at 1265. In determining whether the curative instructions have eradicated the prejudice caused by the improper remark, each case must be considered on its own facts and circumstances. Whitt [v. State], 370 So.2d [736,] at 739 [(Ala.1979)]. The `type of remark, whether reply in kind or not, whether promptly objected to, and the appropriateness of the trial judge's instructions' shall be considered. Whitt, 370 So.2d at 739.
"The Alabama Supreme Court has suggested the following minimum requirements for curative instructions when an objection has been made to an improper direct comment on a defendant's failure to testify:
"`"We suggest that, at a minimum, the trial judge must sustain the objection, and should then promptly and vigorously give appropriate instructions to the jury. Such instructions should include that such remarks are improper and to disregard them; that statements of counsel are not evidence; that under the law the defendant has the privilege to testify in his own behalf or not; that he cannot be compelled to testify against himself; and, that no presumption of guilt or inference of any kind should be drawn from his failure to testify. With appropriate instructions, we hold that the error of the prosecutor's remarks will be sufficiently vitiated so that such error is harmless beyond a reasonable doubt."
"`A curative instruction in a situation of this type, to be of any value, must be given immediately after the harmful statement is made. Further, where there can be any reasonable *284 doubt as to the particular statement in question, the statement should be explicitly identified to the jury so that it can know what must not be considered. Anything less in no way can cure the error.'"
717 So.2d at 5 (quoting Ex parte Wilson, 571 So.2d at 1265, quoting in turn Whitt v. State, 370 So.2d 736, 739 (Ala.1979)). (Citations omitted and emphasis added in Bailey).
This Court has held that "[a] reversal may be prevented if the trial court sustains an objection to the improper comment and properly and appropriately instructs the jury as to the impropriety of the remark." Hammonds v. State, 777 So.2d 750, 765 (Ala.Crim.App.1999), aff'd, 777 So.2d 777 (Ala.2000). Hammonds, however, is distinguishable from this case in that the curative instruction given by the court in Hammonds more closely followed the requirements set out in Ex parte Wilson than the one given by the circuit court in this case.[1] Given that the Alabama Supreme Court was "almost persuaded," 777 So.2d at 778, that the instruction in Ex parte Hammonds was insufficient to comply with the mandate of Ex parte Wilson, the instruction in this case  "Ladies and gentlemen of the jury, I instruct you to disregard the prosecutor's last two questions"  was clearly insufficient.
Although the circuit court promptly sustained defense counsel's objections to the prosecutor's questions, the court's curative instruction was insufficient to eradicate the prejudice caused by these questions. Accordingly, Pettibone's conviction for third-degree robbery must be reversed and this cause remanded to the circuit court for a new trial.
Because we are reversing Pettibone's conviction based on the prejudicial effect of the prosecutor's reference to a prior conviction for the same offense and the inadequacy of the circuit court's curative instruction, we need not address Pettibone's other issue.
REVERSED AND REMANDED.
COBB and SHAW, JJ., concur. McMILLAN, P.J., dissents, with opinion. BASCHAB, J., recuses herself.
McMILLAN, Presiding Judge, dissenting.
I respectfully dissent from the majority opinion, which holds that Pettibone's conviction should be reversed and a new trial held because the trial court's instruction to the jury to disregard the prosecutor's comments was insufficient. Although this court has noted that we are "`hard pressed to think of anything more damning to an accused than information that a jury had previously convicted him for the crime charged,'" Frazier v. State, 632 So.2d 1002, 1007 (Ala.Crim.App.1993), (quoting United States v. Attell, 655 F.2d 703, 705 (5th Cir.1981)), an error of this type can be cured. In Ex parte Hammonds, *285 777 So.2d 777, 778 (Ala.2000), the Alabama Supreme Court was "almost persuaded" that a mistrial should have been granted because the prosecutor had commented on Hammonds's failure to testify and on the fact that Hammonds was imprisoned on an unrelated offense. However, after noting that "the trial judge was present at the trial and could observe the conduct complained of," the Court concluded that "the trial judge corrected any harm by giving appropriate corrective instructions." 777 So.2d at 778.
Here, the trial court immediately instructed the jury to disregard the prosecutor's improper questions. If the trial judge acts promptly to impress on the jury that an improper statement is not to be considered by it in its deliberation, the prejudicial effect of the remarks is removed. Baxter v. State, 723 So.2d 810, 813 (Ala.Crim.App.1998), citing Woods v. State, 344 So.2d 1225, 1229 (Ala.Crim.App.1976), cert. quashed, Ex parte Woods, 344 So.2d 1230 (Ala.1977). Compare Frazier v. State, supra (the trial court apparently gave no curative instructions and the prosecutor's reference to Frazier's previous conviction was reversible error); Gillespie v. State, 549 So.2d 640 (Ala.Crim.App.1989)(the cumulative effect of the prosecutor's repeated questions and insinuations regarding unspecified "other crimes" was reversible error because the trial judge did not at any time specifically instruct the jury to disregard the remarks).
A mistrial is a drastic remedy  one that should be used only to prevent manifest injustice. Ex parte Thomas, 625 So.2d 1156 (Ala.1993). A mistrial should be granted only when the prejudice cannot be eradicated by instructions or by other curative actions of the trial court. Nix v. State, 370 So.2d 1115 (Ala.Crim.App.1979), cert. denied, 370 So.2d 1119 (Ala.1979). Here, the trial court immediately gave instructions to cure the prejudicial effect of the prosecutor's questions. Therefore, the court did not abuse its discretion in denying Pettibone's motion for a mistrial.
Moreover, I do not believe that the trial court's instruction to disregard was so insufficient as to mandate a reversal. In Whitt v. State, 370 So.2d 736, 739 (Ala.1979), the Alabama Supreme stated the following with regard to an instruction on the prosecutor's comment on the defendant's failure to testify:
"We suggest that, at a minimum, the trial judge must sustain the objection, and should then promptly and vigorously give appropriate instructions to the jury. Such instructions should include that such remarks are improper and to disregard them; that statements of counsel are not evidence; that under the law the defendant has the privilege to testify in his own behalf or not; that he cannot be compelled to testify against himself; and, that no presumption of guilt or inference of any kind should be drawn from his failure to testify. With appropriate instructions, we hold that the error of the prosecutor's remarks will be sufficiently vitiated so that such error is harmless beyond a reasonable doubt."
In determining whether an improper remark constitutes harmless error, courts have looked at a number of factors, including: (1) the conduct complained of viewed in the context of the case; (2) the curative measure taken by the court and the prosecution; (3) the intent of the prosecutor in making the remark; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case. Baxter v. State, 723 So.2d 810, 815 (Ala.Crim.App.1998), citing Judge v. State, 539 S.W.2d 340 (Tenn.Crim.App.1976). The court should also consider whether the remarks were lengthy and repeated or single and isolated. Id. Here, the mistake was *286 clear to the trial court, but it may not have been apparent to the jury. Neither defense counsel nor the prosecutor appeared to recognize the nature of the error. Defense counsel objected on a different ground, and the prosecutor inadvertently repeated the error before the judge explained it to her. The court then immediately identified the error for the jury and specifically instructed them to disregard it.
"A motion for mistrial implies a miscarriage of justice and is such a serious matter that it should be granted only when there is a fundamental error in trial which would vitiate the result." Montgomery v. State, 446 So.2d 697, 702 (Ala.Crim.App.1983). Here, the judge's instructions sufficiently corrected the error caused by the prosecutor's questions. The trial court twice sustained Pettibone's objection and then instructed the jury to disregard the prosecutor's questions. "`"The jury is presumed to follow the instructions given by the trial court."'" Lewis v. State, 889 So.2d 623, 656 (Ala.Crim.App.2003) quoting Frazier v. State, 758 So.2d 577, 604 (Ala.Crim.App.), aff'd, 758 So.2d 611 (Ala.1999). Therefore, I believe the trial court properly denied the motion for mistrial, and I dissent from the majority opinion.
NOTES
[1] The curative instruction given in Hammonds was as follows:

"`Ladies and gentlemen of the jury, there was a statement made by the Prosecution, [and] an objection by the Defense, which was sustained. The remark, and I'm not sure in which manner it was intended, but it basically said, "Let him testify." It can be taken several ways, but such remarks are improper, and the jury should disregard that remark by Mr. Valeska. Statements of counsel, as I told you, are not any evidence in this case and should not be used by you or considered by you as evidence. Under the law, the Defendant has the privilege to testify in his own behalf or not. He cannot be compelled to testify against himself, and . . . no presumption of guilt or innocence of any kind should be drawn from his failure to testify.'"
Hammonds v. State, 777 So.2d at 764.