WINDOM, Presiding Judge.
Joey Lee Rigsby appeals his convictions of three counts of sexual abuse of a child less than 12 years old, see § 13A-6-69.1, Ala.Code, 1975, and 2 sentences of 20 years in prison to run concurrently and 1 sentence of 20 years in prison to run consecutively with the other sentences.
The State presented evidence indicating that before December 1, 2008, Rigsby had, for many years, been good friends with Do.G. and A.G., the parents of Da.G. and J.G. On December 1, 2008, Rigsby, who was over the age of 16, went to Do.G. and A.G.’s house. While there he asked Do.G. if he could sleep at their house that night. It was not unusual for Rigsby to spend the night at Do.G. and A.G.’s home, and Do.G. allowed him to do so that night.
At some point in the evening, J.G., who was less than 12 years old, went to bed in the top bunk of a bunk bed in the bedroom he shared with Da.G., who was also less than 12 years old. Shortly thereafter, Da.G. went to bed, getting into the bottom bunk of the same bunk bed. Within a few minutes of Da.G. going to bed, Rigsby came into the bedroom. After entering the room, Rigsby fondled and sodomized both J.G. and Da.G.
After school the next day, Da.G. and J.G. told A.G. what had happened the night before. A.G. contacted Do.G., who came home early from work. After Do.G. spoke with Da.G. and J.G., Do.G. and A.G. talked about the situation. The following morning, A.G. contacted law enforcement to report what had happened.
On appeal, Rigsby argues, among other things, that during rebuttal closing argument, the State improperly commented on his failure to incriminate himself and that the circuit court erroneously refused to give a curative instruction regarding the State’s comment. During the State’s rebuttal closing argument, the following statement was made:
“Since I first heard about [Da.G. and J.G.] and struggling with [Rigsby’s] betrayal of this family, I’ve been thinking about one question myself: Why? Why did [Rigsby] do it? Why did he do this to these little boys? And why did he lie about doing it? Why didn’t he just admit what he done [sic] and give these boys some peace?”
(R. 1124-25.)
Defense counsel immediately objected and gave the following specific reasons as the basis of the objection:
‘Tour Honor, that is a direct comment on [Rigsby] not offering any testimony in this case; not giving a statement to the police, not incriminating himself. He chose not to testify. That is a violation of the law, Your Honor. It is a mistrialable [sic] offense, mistrial and render this case — I move for a mistrial and that all charges be dismissed against my client.”
(R. 1126.) When asked by the circuit court for a response, the State said:
“Judge, I do need that statement read back. As I was explaining it, that is not in anyway what I remember saying. I did say, why — while I was thinking of it I thought why didn’t [Rigsby] admit to give these boys some peace, not why didn’t he take the stand, not why didn’t he make a statement, nothing to that effect.”
(R. 1126.)
The circuit court denied Rigsby’s motion for a mistrial and asked defense counsel if *1100 he wanted a curative instruction. Defense counsel had the complained-of portion of the State’s rebuttal read back by the court reporter and then told the circuit court that Rigsby had “never made a statement at all.” (R. 1128.) The circuit court replied:
“It’s argument. It’s argument. This definitely doesn’t amount to a comment that your client didn’t testify and I don’t think it’s even due a curative statement.”
(R. 1128.) The circuit court again denied the motion for a mistrial and denied a request for a curative instruction.
The State’s argument, “[w]hy didn’t he just admit what he done [sic] and give these boys some peace” (R. 1124-25), was a direct comment on either Rigsby’s failure to testify to his guilt or his failure to plead guilty. In either event, the State improperly commented on Rigsby’s invocation of his “right against self-incrimination.” Ex parte Landrum, 57 So.3d 77, 81 (Ala.2010). Cf. G.E.G. v. State, 54 So.3d 949, 955 (Ala.2010) (“ ‘By pleading guilty, a defendant waives three constitutional rights: the right against self-incrimination, the right to trial by jury, and the right to confront his accusers.’ Heptinstall v. State, 624 So.2d 1111, 1112 (Ala.Crim.App.1993) (citing Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)).”); United States v. Sherman, 474 F.2d 303, 305 (9th Cir.1973) (“A plea of guilty is the most complete form of self-incrimination.”); People v. Collins, 26 Cal.4th 297, 308, 27 P.3d 726, 733, 109 Cal.Rptr.2d 836, 844 (2001) (recognizing that “the right to plead not guilty ... encompasses the right to jury trial, the right to confront opposing witnesses, and the privilege against self-incrimination”); State v. Corbitt, 74 N.J. 379, 384, 378 A.2d 235, 237 (1977) (recognizing the right “not to incriminate [oneself], as by a plea of guilt (Fifth Amendment) and to have a jury trial should he plead not guilty (Sixth Amendment)” (citing United States v. Jackson, 390 U.S. 570, 583, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968))).
“The Self-Incrimination Clause of the Fifth Amendment [to the United States Constitution] reads: ‘No person ... shall be compelled in any criminal case to be a witness against himself.’ ” Doe v. United States, 487 U.S. 201, 207, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988). Article I, § 6, Alabama Constitution of 1901, provides: “That in all criminal prosecutions, the accused has a right ... to testify in all cases, in his own behalf, if he elects so to do; ... and he shall not be compelled to give evidence against himself .... ” The United States Supreme Court has explained that “[t]he opportunity to testify is also a necessary corollary to the Fifth Amendment’s guarantee against compelled testimony.” Rock v. Arkansas, 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).
Accordingly, it is well settled “that a prosecutor may not comment on a defendant’s right against self-incrimination .... ” Hereford v. State, 608 So.2d 439, 442 (Ala.Crim.App.1992) (quoting Ex parte Purser, 607 So.2d 301, 304 (Ala.1992)). The rule of law prohibiting the State from commenting on a defendant’s right against self-incrimination bars comments on a defendant’s right not to testify and on his right to plead not guilty. State v. Wiles, 59 Ohio St.3d 71, 88, 571 N.E.2d 97, 118 (1991); see also State v. Landrum, 53 Ohio St.3d 107, 110, 559 N.E.2d 710, 717 (1990).
“Comments by a prosecutor on a defendant’s failure to testify are highly prejudicial and harmful, and courts must carefully guard against a violation of a defendant’s constitutional right not to testify.” Ex parte Brooks, 695 So.2d 184, 188 (Ala.1997). “Where there has been a direct comment on, or direct reference to, a *1101 defendant’s failure to testify and the trial court does not act promptly to cure the comment, the defendant’s conviction must be reversed.” Ex parte Purser, 607 So.2d at 304 (citing Ex parte Wilson, 571 So.2d 1251 (Ala.1990)); see also Harrison v. State, 706 So.2d 1323, 1325 (Ala.Crim.App. 1997) (“Where there has been a direct comment on a defendant’s failure to testify or an indirect comment with a close identification of the defendant as the person who did not become a witness and the trial court does not act promptly to cure the comment, the defendant’s conviction must be reversed....” (citations omitted)). Likewise, an improper comment by the State on a defendant’s failure to incriminate himself by pleading guilty may also result in reversible error. Cf. United States v. Smith, 934 F.2d 270, 275 (11th Cir.1991); Villarreal v. State, 860 S.W.2d 647, 649 (Tex.App.1993) (holding the following comment by the State to amount to reversible error: “This man [] made a conscious decision to rape a ten-year-old child. But he didn’t do it just once. He forced her to have to come into this courtroom in front of a bunch of strangers.”). Although comments on a defendant’s right not to incriminate himself by testifying or pleading guilty are improper, “[a] reversal may be prevented if the trial court sustains an objection to the improper remark and promptly and appropriately instructs the jury as to the impropriety of the remark.” Pettibone v. State, 891 So.2d 280, 283 (Ala.Crim.App.2003).
Here, the State’s argument relating to Rigsby’s failure to “admit what he [had] done and give [the victims] some peace” (R. 1124-25), was an improper, direct comment on Rigsby’s right against self-incrimination. Further, the circuit court erroneously failed to sustain Rigs-by’s objection and refused to give a curative instruction. Moreover, the State’s comment was made during rebuttal closing argument; therefore, defense counsel did not have an opportunity to respond to the comment to the jury. United States v. Miller, 621 F.3d 723, 732 (8th Cir.2010). Consequently, the State’s comment resulted in prejudicial error.
Finally, the evidence in this case was not so overwhelming so as to render harmless the prejudicial error. See Rule 45, Ala. RApp. P.; Ex parte Greathouse, 624 So.2d 208, 211 (Ala.1993) (recognizing that prejudicial error could be harmless, when the evidence of the defendant’s guilt is “virtually ironclad”). As such, this Court cannot say that the State’s improper comment was harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (holding that before a federal constitutional error can be held to be harmless, the appellate court must be able to declare a belief that it was harmless beyond a reasonable doubt).
Accordingly, Rigsby’s conviction is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
WELCH, KELLUM, BURKE, and JOINER, JJ., concur.