KELLUM, Judge.
The appellant, S.A.J.,[1] was indicted by a Walker County grand jury for rape in the first degree, a violation of § 13A-6-61, Ala.Codé 1975, and three counts of sexual abuse in the first degree, a' violation of § 13A-6-66, =Ala.Code 1975. S.A.J. was convicted of three counts of first-degree sexual abuse, as charged in the indictment and one count of first-degree sexual abuse as a lesser-included offense to the offense of first-degree rape. The circuit court sentenced S.A.J. to 20 years’ imprisonment for each conviction; it ordered that the sentences were to run concurrently. The circuit court further ordered S.A,J. to pay $200 to the crime victims compensation fund and court costs.
The record established the following pertinent facts. A.B. testified that, when she was four years old, she spent some time with her cousin, J.W., at J.W.’s house in Walker County. A.B. indicated that J.W. 'and her mother lived in the house with A.L., A.L.’s girlfriend, A.L,’s two children, and J.W.’s two brothers. A,B. recalled meeting S.A.J. at the house and indicated that he had-a “little beard looking thing,” had brownish-blackish color hair, and always wore a red jacket, • (R. 166.) Á.B. testified, that she knew S.A.J. as “Boggañ” because it was his nickname used by everyone else in the house. (R. 167.)
A.B: testified that she and J.W. were playing outside one day when S.A.J. approached them and said that he had something to show them. S.A.J. then took the girls into a tent behind the house and had them lie down beside each other. S.A.J. then removed the girls’" clothing, held a small knife to A.B.’s throat, and threatened to kill her grandmother if she told anyone. A.B. testified that S.A.J. then touched the girls with “his fingers and his hogie.”[2] (R. 171.) A.B. testified that S.A.J.’s fingers and his hogie were both outside and inside of her vagina. As he was touching her,' S.A.J. called A.B. “Sexy Lexi,” and it made her feel “weird.” (R. 172-73.) • A.B. testified that S.A.J. used his fingers to touch J.W.’s butt and that he also “stuck [his hogie] inside of [the girls].” (R. 174.) A.B. testified that S.A.J.’s hogie was inside of her vagina for a few minutes. A.B. testified that after SA..J. was finished, he took a blue marker and marked a blue dot on each girl.
A.B. testified that she did not tell anyone about the incident because S.A.J. threatened to kill her grandmother. A few days after the incident, A.B,. and J.W. were discussing the event when they were overheard by J.W.’s mother, D.W., who made the girls tell her what had happened.
J.W. testified that when she was five or six years old, A.B. would occasionally come over to her house to play. J.W. indicated that she and A.B. would spend most of *331 their time playing outside. J.W. remembered that S.A.J. had brown hair and a beard, but could not remember anything else about his appearance. J.W. indicated that her memory of the events was hazy. J.W. testified that she recalled an incident where her mother confronted S.A.J. with a gun and asked J.W. if “he was the one that molested [the girls].” (R. 206.) When J.W. shook her head, her relatives took S.A.J. outside and beat him up. J.W. testified that the incident occurred behind the house and that was all she could remember.
J.W. testified that she remembered standing next to D.W.’s bed with A.B. a few days after the incident and discussing what had happened. J.W. also spoke to a therapist about the incident but Indicated that she had coped with the incident by trying hot to talk about it.
Joanna Milkay, a certified counselor and the clinical director at the Clay House Children’s Center, interviewed- A.B. and J.W., separately. According to Milkay, J.W. was “avoidant” during the interview and answered questions with “a lot of I don’t knows or I don’t remember.” (R. 241.) J.W. also repeatedly asked Milkay to talk to A.B. for details of the incident. Milkay testified that A.B.’s interview was typical for a four-year-old; A.B. would move around the room, and she had difficulty concentrating. Although A.B. was able to tell Milkay some of the things that happened, she was unable to give any details or narrative of the incident. Both interviews were recorded, admitted into evidence, and played for the jury.
In the recorded interviews, J.W. indicated that S.A.J. undressed her and touched her vagina with his hand. A.B. told Mil-kay that S.A.J. hugged her with his pants off and touched her and J.W. with his finger. A.B. indicated that S.A.J.- also tried to get J.W. to touch his “hogie.” A.B. stated that S.A.J. used his “hogie” to touch her vagina.
D.W. testified that she married K.W. in February 2007. D.W. testified that' she knew S.A.J. as'KW.’s cousin and considered him family. D.W. testified that S.A.J. was close with her family and would visit their house frequently. D.W. also indicated that A.B. was her niece and that A.B. would often spend the night at D.W.’s house.
D.W. testified that she became concerned. that something had happened to A.B. and J.W. when she noticed an. incident where J.W. acted shy around S.A.J. and tried to get away from him. Until that time, J.W. had been close to S.A.J. and normally wanted to play with him. On a later night, A.B. was. staying over at D.W.’s house when she woke up crying and said that “the man in the red coat had ... done things” to both her and J.W. (R. 261.) D.W, spoke with A.B. and J.W. in her bedroom about the incident but could not remember the specific details. After-wards, D.W. informed A.B.’s mother and grandmother, B.B., of the incident. D.W. did not initially report the incident to law enforcement because she had previously had a bad experience when she filed a report about someone hurting her sons.
Around two weeks after A.B. and J.W. informed D.W. about “the man in the red coat,” S.A.J. returned to the house. When J.W. confirmed that S.A.J. “was the one that truly did it,” D.W. and her brother attacked' and beat S.A.J. Afterwards, D.W. and B.B. went to the police and filed a report against S.A.J.
- B.B. testified that she was A.B.’s grandmother and legal guardian. B.B. testified that A.B. had stayed -overnight at J.W.’s house on a number of occasions. On one such occasion, B.B. was driving and received a telephone call. After learning *332 what had happened, B.B. drove to pick A.B. up from D.W.’s house. When B.B. asked A.B. what had happened, A.B. replied that she could not tell B.B. because S.A.J. threatened to kill B.B.
Whenever B.B. would bathe A.B., A.B. would ask if her “tee-tee hole [was] really big ... [and if] it [was] all stretched out down there?” (R. 396.) When A.B. contracted a yeast infection, B.B. became worried that she had possibly contracted a disease from the incident and took her to the doctor. A medical examination revealed that A.B. had a little bit of irritation in her genital area and a rash on her bottom. The health-service provider prescribed an ointment to treat these symptoms.
B.B. testified that A.B.’s behavior changed after the incident. According to B.B., A.B. was an active child who liked cheerleading and enjoyed playing with her father. After the incident, A.B. would not let her father or any other man touch or hug her.
When A.B. learned that S.A.J. had been beaten up by J.W.’s relative, she asked B.B. if “they cut off all his fingers.” (R. 453.) A.B. indicated that she wanted all of S.A.J.’s fingers cut off because “he hurt [A.B.] with those fingers.” (R. 454.) B.B. also indicated that she had seen thumbprints and handprints on the inner part of A.B.’s thighs, as though they had been pried open and held.
S.A.J. testified in his own defense. S.A.J. indicated that K.W. was his cousin and had “been like an uncle” to S.A.J. before he died. (R. 580.) S.A.J. indicated that he was previously addicted to painkillers and would often go to K.W.’s house and buy Oxycontin pills from the adults at the house, including K.W. and D.W. According to S.A.J., there “was a lot of traffic” at K.W.’s house because all the adults living there sold Oxycontin pills to “anybody who came up at the time.” (R. 584.) S.A.J. did not have a job to pay for Oxycontin pills so he would perform handiwork around their property in exchange for the pills.
S.A.J. testified that he knew both A.B. and J.W. and that he remembered a time in which they were outside playing in the yard. According to S.A.J., it was around the first weekend of February and there were other adults present. SA..J. indicated that the only time he remembered interacting with the girls was when he tried to teach them how to do a flip on the trampoline. S.A.J. could not recall seeing a tent on the property. S.A.J. denied ever seeing the girls without clothes, removing their clothes, touching them in any sexual way, or exposing himself to them.
S.A.J. testified that on February 20, 2007, his sister dropped him off at K.W.’s house. When he arrived, D.W. threatened S.A.J. with a gun and made accusations against him; D.W.’s brother punched him in the face, breaking his jaw in two places. Afterwards, S.A.J. telephoned the authorities and indicated that he had been assaulted and told the authorities everything that he had been accused of doing to A.B. and J.W.
After both sides rested and the circuit court instructed the jury on the applicable principles of law, the jury found S.A.J. guilty of three counts of sexual abuse in the first degree, as charged in the indictment. The jury also found S.A.J. guilty of an additional count of sexual abuse in the first degree as a lesser-included offense to the offense of rape in the first degree,
I.
S.A.J. contends that the circuit court erred when it allowed the prosecutor to comment directly on S.A.J.’s right not to testify. Specifically, S.A.J. argues that *333 one of the prosecutor’s questions during voir dire infringed on S.A.J.’s right not to testify and effectively forced him to testify in his own defense.
The record indicates that during voir dire the prosecutor asked “would any of you be surprised if a child victim of sexual abuse didn’t speak just openly and candidly about it?” (R. 48.) Afterwards, the prosecutor asked “would any of you be surprised if a perpetrator wasn’t really interested in talking openly and candidly about what happened, would any of you find that surprising?” (R. 49.) Defense counsel objected and the circuit court overruled the objection. Afterwards, the prosecutor continued voir dire and asked:
“How many of you believe that every act of sexual abuse against a child gets reported? If it happens, we always know about it? Okay. How many of you would expect for there to be eyewitnesses to acts like that? Would any of you need something more than eyewitness testimony about what happened?”
(R. 49.) Afterwards defense counsel objected again and explained that he objected earlier because the prosecutor commented on S.A.J.’s right to remain silent. The circuit court stated that defense counsel could make that argument at the appropriate time and “make clear that [S.A.J.] doesn’t have to [testify in this case].” (R. 50.)
In Alabama, the right to be free from compulsory self-incrimination is protected by both the Alabama Constitution and statute. “In all criminal prosecutions ... the accused shall not be compelled to give evidence against himself.” Alabama Const.1901, Art. I, § 6. Elaborating on this, the Alabama Supreme Court has held that § 6 is also violated when a prosecutor makes a comment that could be interpreted by the jury as a reference to a defendant’s failure to testify. Ex parte Land, 678 So.2d 224 (Ala.1996).
Section 12-21-220, Ala.Code 1975, provides:
“On the trial of all indictments, complaints or other criminal proceedings, the person on trial shall, at his own request, but not otherwise, be a competent witness, and his failure to make such a request shall not create any presumption against him nor be the subject of comment by counsel. If the district attorney makes any comment concerning the defendant’s failure to testify, a new trial must be granted on motion filed within 30 days from entry of the judgment.”
Id. See also Rigsby v. State, 136 So.3d 1097, 1100 (Ala.Crim.App.2013)(“[A] prosecutor may not comment on a defendant’s right against self-incrimination.” (citations omitted)). “Comments by a prosecutor on a defendant’s failure to testify are highly prejudicial and harmful, and courts must carefully guard against a violation of a defendant’s constitutional right not to testify.” Ex parte Brooks, 695 So.2d 184, 188 (Ala.1997).
“Under federal law, a comment is improper if it was ‘ “ ‘manifestly intended or was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.”” United States v. Herring, 955 F.2d 703, 709 (11th Cir.), cert. denied, 506 U.S. 927, 113 S.Ct. 353, 121 L.Ed.2d 267 (1992) (citations omitted); Marsden v. Moore, 847 F.2d 1536, 1547 (11th Cir.), cert. denied, 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988); United States v. Betancourt, 734 F.2d 750, 758 (11th Cir.), cert. denied, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 365 (1984). The federal courts characterize comments as either direct or indirect, and, in either case, hold that an *334 improper comment may not always mandate reversal.”
695 So.2d at 188 (footnotes omitted).
Likewise, Alabama law distinguishes direct comments from indirect comments. “Where there has been a direct comment on, or direct reference to, a defendant’s failure to testify and the trial court does not act promptly to cure the comment, the defendant’s conviction must be reversed.” Rigsby v. State, 136 So.3d 1097, 1100-01 (Ala.Crim.App.2013) (quoting Ex parte Purser, 607 So.2d 301, 304 (Ala.1992)).
In cases where the comment is an indirect, rather than a direct, comment on the defendant’s failure to testify, the conviction must be reversed if there is a close identification of the defendant as the person who did mot become a witness. Ex parte Wilson, 571 So.2d 1251, 1261 (Ala.1990). This court has explained:
“ ‘[C]overt,’ or indirect, comments are construed against the defendant, based upon the literal construction of Ala.Code 1975, § 12-21-220, which created the ‘virtual identification doctrine.’ Thus, in a case in which there has been only an indirect reference to a defendant’s failure to testify, in order for the comment to constitute reversible error, there must have been a virtual identification of the defendant as the person who did not become a witness.”
Ex parte Brooks, 695 So.2d 184, 188-89 (Ala.1997) (citations and footnotes omitted).
Although comments on a defendant’s right not to incriminate himself or herself by testifying are improper, “[a] reversal may be prevented if the trial court sustains an objection to the improper remark and promptly and appropriately instructs the jury as to the impropriety of the remark.” Pettibone v. State, 891 So.2d 280, 283 (Ala.Crim.App.2003).
We also note that the fact that S.A.J. testified in the instant case has no bearing on our analysis because the alleged prejudicial comment occurred during voir dire. See, e.g., Ex parte Purser, 607 So.2d 301, 303 (Ala.1992)(“[T]he fact that the comment occurred during opening statements, rather than during closing arguments, does not prevent the remark from being a comment on the defendant’s failure to testify.”). See also Collins v. State, 385 So.2d 993 (Ala.Crim.App.1979).
With these principles in mind, wé must also consider the purpose of voir dire— namely, striking a fair and impartial jury. Rule 18.4, Ala. R.Crim. P., provides, in pertinent part:
“(c) Voir Dire Examination. The court shall permit the parties or their attorneys to conduct a reasonable examination of prospective jurors. The court also may conduct an examination of prospective jurors, and the court, in its discretion, may direct that the examination of one or more prospective jurors be separate and apart from the other prospective jurors.
“(d) Scope of Examination. Voir dire examination of prospective jurors shall be limited to inquiries directed to basis for challenge for cause or for obtaining information enabling the parties to knowledgeably exercise their strikes.”
(Emphasis added).
The related commentary to subsection (d) states:
“Section (d) defines the scope of the voir dire examination. This section is in keeping with Alabama case law, which leaves the limit of voir dire examination much to the discretion of the trial court. Smith v. State, 292 Ala. 234, 292 So.2d *335 109 (1974); Redus v. State, 243 Ala. 320, 9 So.2d 914 (1942)....”
In Woods v. State, 789 So.2d 896 (Ala.Crim.App.1999), aff'd, 789 So.2d 941 (Ala.2001), this Court stated:
“‘It is well settled that the trial court has discretion regarding how the voir dire examination of the jury-venire will be conducted, and that reversal can be predicated only upon an abuse of that discretion. Ervin v. State, 399 So.2d 894 (Ala.Crim.App.), cert. denied, 399 So.2d 899 (Ala.1981); Peoples v. State, 375 So.2d 561 (Ala.Crim.App.1979).’
“Bui v. State, 551 So.2d 1094 (Ala.Crim.App.1988), aff'd, 551 So.2d 1125 (Ala.1989), vacated on other grounds, 499 U.S. 971, 111 S.Ct 1613, 113 L.Ed.2d 712. (D.Ala.1991), on remand, 627 So.2d 848 (Ala.), on remand, 627 So.2d 849 (Ala.Crim.App.1991), after remand, 627 So.2d 849 (Ala.Crim.App.1992), rev’d on other grounds, 627 So.2d 855 (Ala.1992). See also Travis v. State, 776 So.2d 819 (Ala.Crim.App.1997); McLeod v. State, 581 So.2d 1144 (Ala.Crim.App.1990); and Rule 18.4, Ala. R.Crim. P.”
789 So.2d at 909.
Although Alabama courts' have addressed the propriety of a prosecutor’s comments on a defendant’s failure to testify at ■ various stages of ■ trial — primarily during closing argument, but also during opening argument or while examining or cross-examining witnesses — we have been unable to locate any Alabama cases addressing the propriety of such comments that were made during voir dire. However, a number of other .jurisdictions have addressed this- issue, with mixed results. For example, Texas courts have held that it is not necessarily reversible error for a prosecutor to comment during voir dire on the defendant’s possible failure to testify. See, e.g., Campos v. State, 589 S.W.2d 424, 426 (Tex.Crim.App.1979). Rejecting a ha-beas corpus petitioner’s claim of ineffective assistance of counsel based on counsel’s failure to object to the prosecutor’s comments on his right not to testify, the United States Court of Appeals for the Fifth Circuit explained:
“A prosecutor’s statements regarding a defendant’s failure to testify made after the introduction- of evidence may violate the Fifth Amendment. See United States v. Johnston, 127 F.3d 380, 396 (5th Cir.1997). During voir dire; however, before the introduction of any evidence; the, prosecution may attempt to determine if a prospective juror will be prejudiced against - the state -by the absence of live testimony from the defendant. See Campos v. State, 589 S.W.2d 424, 426 (Tex.Crim.App.1979) (stating that because the state’s counsel had' no way of knowing whether the defendant would testify, it was not necessarily error to comment on the defendant’s potential failure, to testify during voir dire); see also Sanders v. State, 963 S.W.2d 184, 190 (Tex.App.Corpus Christi 1998, n.w.h.). This is a valid area of voir dire inquiry under Texas law as a prospective juror should be told what the law is before being excused for bias or prejudice against that law. See Cuevas v. State, 742 S.W.2d 331, 343 n. 12 (Tex.Crim.App.1987). Under Strickland [v. Washington, 466 U.S. 668 (1984)], therefore, the failure of Green’s counsel fo object was not deficient because the prosecution’s line of questioning was proper. Green alleges no. facts suggesting that he was prejudiced.”
Green v. Johnson, 180 F.3d 1029, 1038 (5th Cir.1998).
The United States Court of Appeals for the Tenth Circuit likewise rejected a habe- *336 as corpus petitioner’s claim that during voir dire and closing argument the prosecutor violated the petitioner’s right under the Fifth Amendment by improperly commenting on his post-arrest silence and his right not to testify. The Court noted:
“The Oklahoma Court of Criminal Appeals, applying primarily state law, determined that ‘[w]hile the comment ... comes dangerously close to causing a reversal of these convictions and a new trial, when compared to the exceptional amount of evidence against [petitioner], we find it did not contribute to the conviction and is therefore harmless error’ under Chapman [v. California], 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 [(1967)]. Pickens [v. State], 850 P.2d [328,] at 341-42 [(Okla.Crim.App.1983)].
“The ‘mere mention’ of petitioner’s rights ‘is not per se prohibited; rather, it is the prosecutor’s exploitation of a defendant’s exercise of his right to silence which is prohibited.’ Jones, 59 F.3d at 146. Further, the prosecutor’s statements here accurately reflect the law. Cf. Green v. Johnson, 160 F.3d 1029,1038 (5th Cir.1998) (rejecting argument that prosecutor’s statements during voir dire recognizing defendant’s right to remain silent and explaining government cannot make defendant testify were improper comment on defendant’s rights; noting that, while comments regarding defendant’s failure to testify made after introduction of evidence at trial might violate Fifth Amendment, under Texas state law, prosecutor can inquire during voir dire whether prospective jurors will be prejudiced against State by absence of defendant’s live testimony), cert. denied, 525 U.S. 1174, 119 S.Ct. 1107, 143 L.Ed.2d 106 (1999). Nonetheless, even if these statements were improper, we cannot say that the Oklahoma court was unreasonable in determining that their effect was harmless under Chapman.”
Pickens v. Gibson, 206 F.3d 988, 998-999 (10th Cir.2000).
Accordingly, it appears that the state law of Texas and Oklahoma apply a stricter standard in determining whether a prosecutor’s comments during voir dire regarding a defendant’s failure to testify constitutes reversible error — similar to the standard Alabama courts have applied during other stages of trial. By contrast, two jurisdictions have held that a prosecutor’s remarks during voir dire concerning a defendant’s failure to testify mandated reversal. See Marston v. State, 136 So.3d 563, 570 (Fla.2014); State v. Lindsey, 578 S.W.2d 903, 904 (Mo.1979). We note, however, that unlike Texas and Oklahoma both Florida and Missouri apply a more liberal rule for determining whether a prosecutor’s remarks during voir dire constituted reversible error. Because the standard applied by the Texas and Oklahoma courts more closely reflects the standard that Alabama courts have applied when addressing the propriety of a prosecutor’s remarks, concerning a defendant’s failure to testify during other stages of a defendant’s trial, we conclude that, for a prosecutor’s remarks during voir dire regarding a defendant’s failure to testify to constitute reversible error, the remarks must be either a direct reference to the defendant’s failure to testify or, if indirect, a virtual identification of the defendant as the witness who will not testify.
Here, the prosecutor’s question to jurors asking if they would be surprised if “a perpetrator wasn’t really interested in talking openly and candidly about what happened,” was a proper voir dire question and went toward to the ultimate goal of seating a fair and impartial jury. Viewed in the context of the entire voir dire, we do not believe that the question was manifest *337 ly intended to comment on S.AJ.’s right not to testify, nor do we believe it reasonable to conclude that the jury interpreted it as such. The circuit court instructed the jurors that the attorneys’ statements “are not evidence and you should disregard any remark, statement or argument which is not supported by the evidence or by the law as given to you by the Court.” (R. 691.) The prosecutor’s remark did not constitute a direct comment on S.A.J.’s right not to testify or, as S.A.J. claims on appeal, effectively force him to testify at trial; therefore, S.A.J. is not entitled to relief on this claim.
II.
S.A.J. next contends that the circuit court erred when it denied his request for a curative instruction regarding S.A.J.’s tattoos. Specifically, S.A.J. argues that the circuit court should have given the jury a curative instruction when the prosecutor asked S.A.J. about a tattoo on his hand. S.A.J. further argues that the circuit court’s denial of an immediate curative instruction left the jury to speculate and that S.A.J.’s substantial rights were “probably injuriously affected” under Rule 45, Ala. R.App. P.
During the State’s cross-examination of S.A.J., the prosecutor asked S.A.J. if he was interested in tattoos. Defense counsel objected and, in the presence of the jury, the following discussion occurred:
“[Prosecutor]: Well, Judge, I’m just interested in why he’s got the Band-Aid covering those tattoos that he hasn’t covered all week that’s on his hand, on his thumb.
“THE COURT: Okay.
“[Prosecutor]: I can ask him about that.
“[Defense counsel]: You can ask him about — no, he can’t judge.
“[Prosecutor]: Do you have something to hide?
“[S.A.J.]: No, sir.
“[Prosecutor]: What’s under there?
“[Defense counsel]: Judge, he’s been in the courtroom this entire week.
“[Prosecutor]: The jury hasn’t had an opportunity to see it.
“THE COURT: Do you know what’s under there Mr. [Prosecutor]?
“[S.A.J.]: He does. I’m sure he saw it, yes, sir.
“THE COURT: Just a minute. And is it relevant? Tell me how it’s relevant.
“[Defense counsel]: Can we do that at side-bar? No idea what he’s going to say.”
(R. 597-98.)
Outside the presence of the jury, the attorneys and the Court discussed S.A.J.’s tattoo. In the discussion, the circuit court learned that the tattoo was a Nazi “SS” tattoo and sustained S.A.J.’s objection. S.A.J. then asked the circuit court to instruct the juiy to disregard the last line of the State’s questioning, but the circuit court refused S.A.J.’s request. However, during its instructions to the jury, the circuit court instructed the jury “not to speculate as to possible answers to questions which I did not require to be answered.” (R. 692.)
Relying on Ex parte Thomas, 625 So.2d 1156 (Ala.1993), S.A.J. contends that the circuit court’s failure to give an immediate curative instruction constitutes reversible error. In Thomas, the Alabama Supreme Court held that the trial court erroneously admitted evidence that a murder defendant was a member of a gang. In reversing the conviction, the Court held that the evidence of the defendant’s gang membership was “irrelevant and highly prejudicial.” 625 So.2d at 1158.
*338 In the instant case, the circuit court sustained S.A.J.’s objection; thus, the jury was never exposed to the tattoo. Thus, the “irrelevant and highly prejudicial” evidence present in Thomas was not present in this case. Moreover, given that the court instructed the jurors not to speculate as to'the nature of the tattoo or why S.A.J. had bandaged it, no grounds for reversal exist because it is presumed that jurors follow the circuit court’s instructions. See Calhoun v. State, 932 So.2d 923, 965 (Ala.Crim.App.2005). Accordingly, S.A.J. is entitled to no relief on this issue.
III.
S.A.J. next contends that the circuit court erred when it allowed the State to introduce evidence of a prior burglary conviction that he alleges was “presumptively inadmissible” because it occurred more than 10 years earlier. S.A.J. further argues that the State failed to give proper notice that it would use his burglary conviction to impeach his credibility and that the State went beyond the permissible limits of questioning when it asked “the name of the crime, the time and place of conviction, and the punishment the defendant received.” (S.A.J.’s brief, p. 32.)
The record indicates that during the State’s cross-examination of S.A.J., the following events occurred:
“[Prosecutor]: Now, [S.A.J.], let’s get one thing clear.
“[S.A.J.]: Yes, Sir.
“[Prosecutor]: That you take things, don’t you?
“[S.A;j.]: Sir?
“[Prosecutor]: You take things, don’t you?
“[S.A.J.]: What kind of things?
“[Prosecutor]: Well, things that don’t belong to you.
“[S.A.J.]: I have before.
“[Defense counsel]: Your Honor, I’m going to object again. This is an improper attempt at impeachment of some sort. May we approach again?
“THE COURT: No. He said he had before.
“[Prosecutor]: And in fact, you pled guilty to such, have you not?
“[S.A.J.]: Yes, sir.
“[Prosecutor]: That’s right. You pled guilty to a felony in the State of Alabama, didn’t you?
“[S.A.J.] Yes, sir.
“[Defense counsel]: Your honor, I’m going to object again that it’s not relevant to this proceeding.
“THE COURT: Well, it’s impeachment, depending on what kind of felony it was, if it’s one that the law recognizes as going to the truth or veracity.
“[Defense counsel]: It’s also been so long ago as to be too remote.
“THE COURT: You can argue that in just a few minutes, but I haven’t heard. Let’s get to the meat in the coconut.
[[Image here]]
“[Prosecutor]: In fact, you pled guilty to burglary, did you not?
“[S.A.J.]: Yes, I did.
“[Prosecutor]: And you said in your testimony that you’ve never testified before, right?
“[S.A.J.]: That I didn’t believe to have testified.
“[Prosecutor]: Well, that’s not really true, is it?
“[S.A.J.]: Not that I — I don’t know.
“[Prosecutor]: Because—
“[S.A.J.] It’s been so long, I think I was seventeen when that event occurred.
“[Prosecutor]: Because you testified in a revocation hearing, did you not?
*339 “[S.A.J.] Not — I don’t remember testifying in one.
“[Prosecutor]: And your probation was revoked based on your testimony.
“[Defense counsel]: Your Honor, this is an improper way to impeach him. If he’s got evidence that he’s testified before, he needs to first show that to the witness and see if he says, ‘Oh yeah, now I remember.’ He’s just' throwing stuff up there against the wall to see what sticks.
“THE COURT: . Sustained.”
(R. 602-04.)
Afterwards, the prosecutor showed S.A.J. a certified copy of an order reflecting that S.A.J. had pleaded guilty in 2001 to third-degree burglary. Defense counsel objected on the grounds that S.A.J.- would not be able to read it. Afterwards, the following conversation occurred:
“THE COURT: Surely y’all can stipulate as to what it is 'instead of just dancing all around" the place.”
“[Defense counsel]: That’s a conviction from a 1999 case.
“THE COURT:, Let me see that, please, sir. This appears to be a certified copy of an order entered by Judge Brotherton December .3 of 2001 wherein the defendant entered a plea of guilty to burglary in the third degree. Am I right about that, gentlemen?
“[Prosecutor]: That appears to be correct, Your Honor.
“THE COURT: That’s what-that is.
“[Prosecutor]: Yes. We move that that exhibit be admitted.
“THE COURT: It’s admitted. Now let’s ask questions.”
(R. 605-06.)
The Alabama Supreme Court has long held:
“‘Review on appeal is restricted to questions and issues properly and timely raised at trial.’ Newsome v. State, 570 So.2d 703, 717 (Ala.Crim.App.1989). ‘An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.’ Pate v. State, 601 So.2d 210, 213 (Ala.Crim.App.1992). ‘“[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof.’ McKinney v. State, 654 So.2d 95, 99 (Ala.Crim.App.1995) (citation omitted). ‘The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.’ Ex parte Frith, 526 So.2d 880, 882 (Ala.1987). ‘The,purpose of requiring a specific objection to preserve an issue for appellate review is to put the trial judge on notice of the alleged error, giving an opportunity to correct it before the case is submitted to the jury.’ Ex parte Works, 640 So.2d 1056, 1058 (Ala.1994).”
Ex parte Coulliette, 857 So.2d 793, 794-95 (Ala.2003).
Initially, we note that S.A.J.’s- argument that the State did not provide proper notice that it intended to use ,S.A.J.’s prior conviction to impeach was never raised before the circuit court. Thus, that issue is not preserved for our review. See Ex parte Coulliette, supra.
Moreover, S.A.J.’s objection to the State’s questions regarding the specifics of his convictions was sustained. Thus, he received no adverse ruling to his objection — a prerequisite for appellate .review. See Pettibone v. State, 91 So.3d 94, 114 (Ala.Crim.App.2011) (defendant must first obtain an adverse ruling in. order to preserve an issue -for appellate review). Further, S.A.J..made no request for a curative *340 instruction regarding the objection. Therefore, this argument is not preserved for review on appeal. See Coulliette⅛ supra.
Finally, S.A.J.’s objection regarding the remoteness of the conviction was likewise unpreserved, because S.A.J. did not object to it in a timely and specific manner. Although the circuit court sustained S.A.J.’s objection regarding the State’s questions about the 2001 burglary conviction, S.A.J. allowed the State to introduce the certified copy of his conviction without objection. Thus, this argument is not preserved for our review. Accordingly, S.A.J. is not entitled to relief on this issue.
IV.
S.A.J. next contends that the circuit court erred because, he says, it allowed the State to shift the burden of proof to the defense. Specifically, S.A.J. argues that the circuit court committed reversible error When it allowed the prosecutor to ask “where was the evidence?” in its closing argument. (S.A.J.’s brief, p. 34.) According to S.A.J., this question shifted the burden of proof from the State to himself.
The record indicates that during closing arguments, the prosecutor said:
“Now, [defense counsel] also told you in his opening statement that on February the 5th when [S.A.J.] shows up at the hospital beat up that he was scared to tell them that this was about a drug deal. He was too scared to tell the police this was about a drug deal, so instead he told them he had been accused of molesting children. I can’t be involved in a drug deal, but being an accused child molester just ain’t that bad? That’s what we’re going with? You know, I want you to ask yourself how much sense does that make. It does not add up. It doesn’t add up.
“And ladies and gentlemen, one of the beautiful things about what you guys get to do, you get to take a lot of things back with you into that deliberation room. You get to take the law as the judge gives it to you and his instructions, you get to take what you hear on the stand, the evidence, but you also get to take your common sense. And ladies and gentlemen, common sense tells us that the defense on this one, it just didn’t even pass the smell test. It doesn’t add up. Where was the evidence?”
(R. 635.) At this point, S.A.J. objected on the grounds that the defense did not have to put any evidence forward and that the State had the burden of proof; the objection was overruled.
Immediately after the circuit court overruled S.A.J.’s objection, the prosecutor said: “Now, when we started, I told you the [S]tate did have the burden of proof. It’s my burden to come in here and prove to you beyond a reasonable doubt that a rape and three touchings happened that day. That’s my burden.” (R. 636.) Furthermore, in charging the jury, the circuit court instructed the jury that it was the State’s burden to prove the case.
In support of his argument, S.A.J. cites Broadnax v. State, 825 So.2d 134 (Ala.Crim.App.2000), and argues that the prosecutor’s statement created “an atmosphere that deprived S.A.J. of due process and fundamental fairness, and ‘probably injuriously affected’ his substantial rights.” (S.A.J.’s brief, p. 34.) In Broad-nax, this Court reviewed a prosecutor’s statement during her initial closing argument asking, “[a]re they giving me another reasonable explanation for all of this?” 825 So.2d at 184. This Court ultimately determined that the State did not attempt *341 to shift the burden to Broadnax and that the statement in question “merely asked the jury to consider the evidence presented and to determine whether the evidence established reasonable doubt as to Broad-nax’s guilt.” 825 So.2d at 185.
“ ‘ “This court, in recognizing the government’s burden and obligation of proving guilt beyond a reasonable doubt, has recognized that a prosecutor’s comment may be so prejudicial as to shift the burden of proof. See Duncan v. Stynchcombe, 704 F.2d 1218, 1216 (11th Cir.1983). Such prosecutorial misconduct, if ‘so pronounced and persistent that it permeates the entire atmosphere of the trial,’ requires reversal. United States v. Alanis, 611 F.2d 123, 126 (5th Cir.), cert. denied, 445 U.S. 955, 100 S.Ct. 1607, 63 L.Ed.2d 791 (1980) (quoting United States v. Blevins, 555 F.2d 1236 (5th Cir.1977), cert. denied, 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 761 (1978)). Prosecutors must observe the distinction between the permissible practice of arguing evidence and suggesting inferences which the jury might draw from it and the impermissible practice of arguing suggestions beyond the evidence. See Houston v. Estelle, 569 F.2d 372, 380 (5th Cir.1978). Additionally, prosecutors must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence. See [In re] Winship, 397 U.S. [358,] at 364, 90 S.Ct. [1068,] at 1072[, 25 L.Ed.2d 368 (1970)]. We reaffirm the former Fifth Circuit’s position that ‘the limits of proper argument find their source in notions of fairness, the same source from which follows the right to due process of law.’ Houston, 569 F.2d at 380.”
“‘United States v. Simon, 964 F.2d 1082,1086 (11th Cir.1992).’
“DeBruce v. State, 651 So.2d 599, 604 (Ala.Cr.App.1993), aff'd, 651 So.2d 624 (Ala.1994)”
Wilson v. State, 777 So.2d 856, 894 (Ala.Crim.App.1999).
In the instant case, we conclude that the prosecutor did not attempt to shift the burden of proof to S.A.J. Moreover, the circuit court, at the conclusion of the closing arguments, instructed the jury as to the State’s burden of proof and the presumption of innocence attached to S.A.J. The jury is presumed to have followed the circuit court’s instructions. See Calhoun, supra. Thus, no juror could have reasonably construed the State’s comment as shifting the burden of proof to S.A.J. Accordingly, S.A.J. is not entitled to relief on this issue.
V.
S.A.J. next contends that the circuit court erred when it allowed the prosecutor to suggest during closing arguments that S.A.J. would commit future illegal acts if acquitted. Specifically, S.A.J. argues that the State’s comment violated his fundamental right to a fair trial.
The record indicates that during closing arguments, the following occurred:
“[Prosecutor]: [B]ut this I do know, and you can count on this, this train has been riding for a long time. It was in their neighborhood, but what I’m afraid of, as long as he’s driving the train, the next time it may end up in Carbon Hill, it may end up in Cordova, it may end up in Curry, or maybe it’ll ride through Eldridge or Empire or Good Springs. And if this train doesn’t stop—
*342 “[Defense counsel]: Your Honor, that is an improper argument. He’s asking the jury, apparently, to find my client guilty based on something other than the evidence in this case. Sounds like he’s trying—
“[Prosecutor]: That’s absolutely not what I’m—
“[Defense counsel]: It sounds like he’s trying to ask them to find him guilty for some other reason than the evidence in this case. And that’s an improper argument.
“THE COURT: Let’s move on.
“[Prosecutor]: It’s going to keep riding, it’s going to keep moving because he’s in charge of it, so I’m asking you to derail this train. While they may not get their childhood back, because [the prosecutors] don’t have the power to do that, but maybe we can give them some peace back. I wish I could answer the question for you, but it’s not up to me.”
(R. 687-88.) The prosecutor finished his closing argument without further objection by defense counsel.
“ ‘Review on appeal is restricted to questions and issues properly and timely raised at trial.’” Ex parte Coulliette, 8,57 So.2d 793, 794 (Ala.2008) (quoting Newsome v. State, 570 So.2d 703, 717 (Ala.Crim.App.1989)). It is well settled that “ ‘[a]n issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.’ ” Dickey v. State, 901 So.2d 750, 756 (Ala.Crim.App.2004) (quoting Pate v. State, 601 So.2d 210, 213 (Ala.Crim.App.1992)). A defendant must receive an adverse ruling to preserve an objection for review on appeal. Dickey, 901 So.2d at 755. See also Ragsdale v. State, 448 So.2d 442, 444 (Ala.Crim.App.1984) (“[W]here as here, the trial court simply agrees by stating, ‘Let’s go ahead’ or ‘move on,’ it is incumbent upon defense counsel to make a motion to exclude, motion, for mistrial or request for instructions from the trial court so that an adverse ruling is obtained which preserves the matter asserted for appellate review.”).
In the instant case, S.A.J. never obtained an adverse ruling to his objection. Accordingly, this issue is not preserved for our review on appeal.
VI.
.S.A.J. next contends that the circuit court erred in sentencing him as a habitual felony offender and allowing the State to introduce SAJ.’s prior burglary conviction during sentencing. Specifically, S.A.J. argues that he is entitled.to new sentencing hearing because the circuit court erred when, he says, it allowed the State to introduce evidence of his conviction after it had “closed its case.” , (S-AJ.’s brief, p. 38.) S.A.J. also argues that because his conviction was not properly admitted, he could not be sentenced as a habitual felony offender.
The record indicates that during sentencing, the State finished' questioning its final witness and indicated that it had “no further witnesses!;] however [the State] would request the opportunity for argument before you render your decision.” (R. 721-22.)
After the defense presented its witnesses, the . State introduced a certified copy of S.A.J.’s third-degree burglary conviction that it had previously introduced during trial. Defense counsel objected to the introduction of the conviction as untimely. In response, the circuit court said that it did not think that the State had rested, and it overruled S.A.J.’s objection.
Initially, we note that the State had not “closed -its case.” Even if the State had rested its case, the circuit court did not err when it allowed the State to introduce the *343 certified copy of the burglary conviction because the Alabama Rules of Evidence do not apply to sentencing proceedings. See Rule 1101(b)(3), Ala. R. Evid. Even if the case was “closed” and the State was barred from introducing the certified copy of the burglary conviction, S.A.J.’s argument would be meritless. Rule 26.6(b)(3)(iii), Ala. R.Crim. P., states that “[i]f at the hearing the defendant disputes any conviction presented by the state, the court may allow the state to present additional evidence of the disputed conviction, either by way of rebuttal or at a future time to be set by the court.” Thus, there was no error in the introduction of S.A.J.’s prior burglary conviction or in the circuit court’s decision to sentence S.A.J. as a habitual felony offender. Accordingly, S.A.J. is entitled to no relief oh this issue.
VII.
S.A.J. contends that the circuit court erred when it dismissed his motion for a judgmént of acquittal. Specifically, S.A.J. argues that there was insufficient evidence to support his convictions. S.A.J. further argues that the jury’s verdict was against the great weight of the evidence because, he says, the allegations made by A.B. and J.W. were “fatally generic and vague.” (S.A J.’s brief, p. 42.)
A. *344 Gavin v. State, 891 So.2d 907, 974 (Ala.Crim.App.2003), cert. denied, 891 So.2d 998 (Ala.2004) (quoting Ward v. State, 610 So.2d 1190, 1191 (Ala.Crim.App.1992)).
*343 “ ‘ “In determining the sufficiency of thé evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.”’ Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). ‘ “The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.”’ Nunn v. State, 697 So.2d 497,(498 (Ala.Crim.App.1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). ‘ “When there , is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.” ’ Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). ‘The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decisibn [by] the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).
“ ‘The trial court’s denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty, Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In' applying this standard, this court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983). When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal does not constitute error. McConnell v. State, 429 So.2d 662 (Ala.Cr.App.1983).’ ”
*344 Under § 13A-6-69.1, Ala.Code 1975, “[a] person commits the crime of sexual abuse of a child less than 12 years old if he or she, being 16 years old or older, subjects another person who is less than 12 years old to sexual contact.” Sexual contact is defined in § 13A-6-60(3), Ala.Code 1975, as “any touching of the sexual or other intimate parts of a person not married to the actor, done for the purposes of gratifying the sexual desire of either party.” “ ‘Whether [the accused’s] touching is for the purpose of sexual gratification is a question for the jury and may be inferred from the act itself.’ ” Ex Parte A.T.M., 804 So.2d 171, 174 (Ala.2000) (quoting Roughton v. State, 644 So.2d 1339, 1340 (Ala.Crim.App.1994)). In addition, the courts of this State have long held that the testimony of the victim of a sexual offense is sufficient to establish a prima facie case of sexual abuse. See, e.g., Shouldis v. State, 953 So.2d 1275, 1285 (Ala.Crim.App.2006) (“The victim’s testimony alone is sufficient to establish a pri-ma facie case of either rape or sexual abuse.”).
The evidence, when viewed in a light most favorable to the State, established that during the winter of 2007, S.A.J. went over to D.W.’s house. S.A.J. went to the backyard where he saw J.W. and A.B. playing. S.A.J. told A.B. and J.W. that he had something to show them and told them to follow him into a tent behind the house. Inside the tent, S.A.J. removed A.B. and J.W.’s clothing, held a knife to A.B.’s throat, and threatened to kill A.B.’s grandmother if the girls told anyone. S.A.J. then used his hands, fingers, and penis to touch A.B.’s and J.W.’s vaginas. Given the evidence set out above, there was ample evidence from which the jury could conclude that S.A.J. was guilty of four counts of sexual abuse of a child under 12 years of age. Accordingly, the circuit court did not abuse its discretion when it denied S.A.J.’s motion for a judgment of acquittal.
B.
Likewise, S.A.J.’s convictions were not against the great weight of the evidence.
“The granting or denying of a motion for new trial rests largely within the discretion of the trial court, and the exercise of that discretion carries with it a presumption of correctness that will not be disturbed on appeal unless some legal right was abused and the record plainly and palpably shows that the trial court was in error.”
Knight v. State, 710 So.2d 511, 513 (Ala.Crim.App.1997) (quoting Beard v. State, 661 So.2d 789, 796 (Ala.Crim.App.1995)) (citations omitted).
In Thompson v. State, 97 So.3d 800, 810 (Ala.Crim.App.2011), this Court explained:
“1 “The weight of the evidence is clearly a different matter from the sufficiency of the evidence. The sufficiency of the evidence concerns the question of whether, ‘viewing the evidence in the light most favorable to the prosecution, [a] rational fact finder could have found the defendant guilty beyond a reasonable doubt.’
“ ‘ “In contrast, ‘the “weight of the evidence” refers to a “determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.” ’ We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial. ‘ “The credibility of witnesses and *345 the weight or probative force of testimony is for the jury to judge and determine.” ’ ” ’
“Seaton v. State, 645 So.2d 341, 342-43 (Ala.Crim.App.1994), quoting Johnson v. State, 555 So.2d 818, 819-20 (Ala.Crim.App.1989) (citations omitted).
“ ‘Once a prima facie case has been submitted to the jury, this Court will not upset the jury’s verdict except in extreme situations in which it is clear from the record that the evidence against the accused was so lacking as to make the verdict wrong and unjust. Deutcsh v. State, 610 So.2d 1212, 1234-35 (Ala.Crim.App.1992). This Court will not substitute itself for the jury in determining the weight and probative force of the evidence. Benton v. State, 536 So.2d 162, 165 (Ala.Crim.App.1988).’
“May v. State, 710 So.2d 1362, 1372 (Ala.Crim.App.1997).
“‘Furthermore, on appeal, there is a presumption in favor of the correctness of the jury verdict. Saffold v. State, 494 So.2d 164 (Ala.Crim.App.1986). Although that presumption of correctness is strong, it may be overcome in a limited category of cases where the verdict is found to be palpably wrong or contrary to the great weight of the evidence. Bell v. State, 461 So.2d 855, 865 (Ala.Crim.App.1984).’
“Henderson v. State, 584 So.2d 841, 851 (Ala.Crim.App.1988).”
Thompson, 97 So.3d at 810.
This case does not fall within that limited category where the jury’s verdict was palpably wrong or contrary to the great weight of the evidence. The State presented evidence that showed that S.A.J. took A.B. and J.W. into a tent in the backyard of J.W.’s house. Inside the tent, S.A.J. undressed A.B. and J.W. and then used his hand and penis to touch their vaginas. The instant case does not present a situation where the evidence against S.A.J. was so lacking as to make the jury’s verdict wrong and unjust. The credibility of the witnesses and the weight and probative force of their testimony was for the jury to determine. Because the jury’s verdict was not against the great weight of the evidence, S.A.J. is not entitled to relief based on this argument.
VIII.
Finally, S.A.J. contends that his convictions should be reversed and that he is entitled to a new trial on the ground that “the cumulative errors in this case, including all the errors addressed [in issues I-VII], have probably injuriously affected S.A.J.’s substantial rights to a fair trial.” (S.A.J.’s brief, p. 48.)
“ ‘Review on appeal is restricted to questions and issues properly and timely raised at trial.’” Ex parte Coulliette, 857 So.2d 793, 794 (Ala.2003) (citing Newsome v. State, 570 So.2d 703, 717 (Ala.Crim.App.1989)). “‘An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.’ ” Id. at 794 (citing Pate v. State, 601 So.2d 210, 213 (Ala.Crim.App.1992)). “[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof.” McKinney v. State, 654 So.2d 95, 99 (Ala.Crim.App.1995) (citation omitted). ' S.A.J. did not raise this issue before the circuit court. Accordingly, this claim is not.properly preserved for our review.
Moreover, SAJ.’s claim is without merit. As discussed above, none of the arguments S.A.J. has raised require reversal, individually. When the arguments are *346 considered cumulatively, we do not find that “the accumulated errors have ‘probably injuriously affected [S.A.J.’s] substantial rights.’” Ex parte Woods, 789 So.2d 941, 941-43 n. 1 (Ala.2001)(quoting Rule 45, Ala. R.App, P.)-Therefore, S.A.J; is not entitled to relief on this claim.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
WINDOM, P.J., and BURKE and JOINER, JJ., concur. WELCH, J., concurs in .part and concurs in the result in part.

. Initials are used throughout the decision to protect the anonymity of the victims, A.B. and J.W. See Rule 52, Ala. R.App.'P.

. “Hogie" was the term A.B. and J.W. used in referring to S.A.J.’s penis.